THE STATE, EX REL. OHIO MOTORISTS ASSOCIATION, *v.* MASTEN, MAYOR, ET AL.

124

(No. 45953—Decided December 22, 1982.)

*Mr. John D. Leech, Mr. Richard P. Goddard* and *Mr. Mitchell G. Blair,* for relator.

*Mr. Richard D. Martinez,* law director, and *Mr. Ronald M. Mottl,* for respondents.

JACKSON, J. This is an original action in mandamus brought by relator, Ohio Motorists Association, and the intervenor-relator, Olen E. Reger, against the Mayor of the village of Linndale (in his capacity as President of the Linndale Council), the members of the Council of Linndale, and the Linndale Chief of Police. It is alleged in the relator's petition that the village of Linndale has erected a "Stop Here on Red" sign and a stop line on the surface of the road requiring motorists to stop more than one hundred twenty feet before reaching an intersection, when the traffic light at the intersection is red. Relators claim that this sign and stop line are in conflict with the general laws of Ohio, and that the aforementioned public officials are subject to an order of mandamus requiring any such traffic control device erected by them to conform with state law.

The Ohio Motorists Association, the relator, is an Ohio nonprofit corporation, with a membership of approximately four hundred thirty thousand persons. One of the purposes of the organization is to promote the interests of motorists. Reger, the intervenor-relator, is a member of the Ohio Motorists Association who successfully defended himself against a charge of violating the Linndale ordinance in question.

R.C. 4511.11 provides, in pertinent part, as follows:

"(A) Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code upon highways under their jurisdiction as are necessary to indicate and to carry out sections 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic.

"* * *

"(D) All traffic control devices erected on a public road, street, or alley, shall conform to the state manual and specifications."

The terms "local authorities," "highway," and "traffic control devices," as used in the foregoing statute, are defined in R.C. 4511.01 as follows:

"(AA) 'Local authorities' means every county, municipal, and other local board or body having authority to adopt police regulations under the constitution and laws of this state.

"(BB) 'Street' or 'highway' means the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel.

"* * *

"(QQ) 'Traffic control devices' means all signs, signals, markings, and devices placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guid-

ing traffic, including signs denoting names of streets and highways."

The Department of Transportation has adopted a Manual and Specifications for a Uniform System of Traffic Control Devices, pursuant to its statutory duty under R.C. 4511.09.[1] Section 6D-10(d) and (i) of this manual state:

"(d) Except where the width of the intersecting street or other conditions make it physically impractical, at least one and preferably both of the signal faces [of the traffic light] required by paragraph (a) above shall be located not less than 40 feet nor more than 120 feet beyond the stop line. * * *

"* * *

"(i) When the nearest signal face is more than 120 feet beyond the stop line, a supplemental near side signal indication shall be provided."

The parties have stipulated that the "Stop Here on Red" sign and stop line are located two hundred eighty-four feet away from the traffic light at the intersection of West 117th Street and Bellaire Road. It is also stipulated that the village of Linndale has neglected to place a supplemental near side traffic light next to the "Stop Here on Red" sign and stop line. Accordingly, this court must conclude that the sign and stop line are positioned in violation of the Manual and Specifications for a Uniform System of Traffic Control Devices, and that this also represents a violation of R.C. 4511.11(A) and (D), quoted *supra.*

The only issue in dispute is whether the Linndale Village Council is subject to a writ of mandamus, ordering it to conform the unlawfully positioned "Stop Here on Red" sign and stop line to statewide specifications.

In response to relator's complaint, the respondents filed a motion to dismiss in which they contended: (1) that mandamus does not lie in the case at bar because mandamus may not be used to force a legislature to act, (2) that the village of Linndale does not have a clear legal duty to take action to correct the improper placement of the "Stop Here on Red" sign and stop line, and (3) that the relator Ohio Motorists Association lacks standing to sue. This court overruled respondents' motion to dismiss. In their brief on the merits, respondents raise only one argument in opposition to relator's petition; respondents reiterate their contention that the village of Linndale does not have a clear legal duty to act.

The respondents' three contentions, raised in their motion to dismiss and brief on the merits, are separately discussed below.

I

Respondents' Proposition No. 1:

"Mandamus does not lie to force a legislative body to exercise a discretionary function in a particular fashion."

The respondents contend that mandamus does not lie to control the discretion of legislative bodies, citing, *inter alia,* the case of *Cleveland, ex rel. Neelon,* v. *Locher* (1971), 25 Ohio St. 2d 49 [54 O.O.2d 189]. In that case the Supreme Court issued a writ of mandamus against the Cleveland City Council, ordering it to enact legislation setting maximum hours for workers of eight hours a day and forty-eight hours per week. The court stated at page 52:

"Although it is ordinarily stated that mandamus does not lie to compel a legislative body to enact legislation on the basis that this would infringe on the doctrine of separation of powers, there are

---

[1] R.C. 4511.09 provides:

"The department of transportation shall adopt a manual and specifications for a uniform system of traffic control devices, including signs denoting names of streets and highways, for use upon highways within this state. Such uniform system shall correlate with, and so far as possible conform to, the system approved by the American Association of State Highway Officials."

instances in which such a rule cannot apply. Thus, a court may determine that an act or statute is invalid because it is contrary to the Constitution and compel its amendment. *Baker* v. *Carr* (1962), 369 U.S. 186. Similarly, *where a constitution or a charter imposes a mandatory duty upon a legislative body to enact legislation to give life to a constitutional provision, a court may compel the legislative body to act.* Under such circumstances, a court may compel the legislative body to act, but it cannot direct the course of action. [Emphasis added.]

"Where a city charter requires that city council *shall* enact ordinances to provide for the enforcement or execution of a particular provision of the charter, a mandatory duty is placed upon city council to comply with that requirement of the charter, and mandamus will lie to compel the council to act. *State, ex rel. Scott,* v. *Masterson* (1962), 173 Ohio St. 402 [20 O.O.2d 36], 183 N.E. 2d 376. See, also, *State, ex rel. Foster,* v. *Bd. of County Commrs.* (1968), 16 Ohio St. 2d 89 [45 O.O. 2d 442], 242 N.E. 2d 884. [Emphasis sic.]

"If the members of a legislative body can ignore, with impunity, the mandates of a constitution or a city charter, then it is certain that the faith of the people in constitutional government will be undermined and eventually eroded completely."

Similarly, in the case of *State, ex rel. Campanella,* v. *Kucinich* (1977), 59 Ohio App. 2d 278 [13 O.O.3d 278], this court issued a writ of mandamus ordering the Cleveland City Council to pass legislation levying taxes in the amount authorized by the Cuyahoga County Budget Commission, pursuant to its statutory duty under R.C. 5705.34. This court held at page 282:

"*Mandamus* lies to compel the performance of an act which is clearly enjoined by law upon a respondent. *State, ex rel. Pistillo,* v. *Shaker Heights* (1971), 26 Ohio St. 2d 85 [55 O.O. 2d 134]; *State, ex rel. Freeman,* v. *Valentine* (1971), 25 Ohio St. 2d 183 [54 O.O.2d 296]. This principle ap-plies whether the source of the duty involved is a city charter provision, *Cleveland, ex rel. Neelon,* v. *Locher* (1971), 25 Ohio St. 2d 49 [54 O.O.2d 189], or a state statute, *State, ex rel. Tulley,* v. *Brown* (1972), 29 Ohio St. 2d 235 [58 O.O.2d 489].

"The Ohio Supreme Court has held that where a plain and unmistakably clear provision in a city charter is not self-executing, but is followed by a provision that council shall, by ordinance, provide for the enforcement of such provision, *mandamus* lies to compel the council to enact such an ordinance. *Cleveland, ex rel. Neelon,* v. *Locher, supra.*

"Likewise in the present case, where the state statute requires that the taxing authority of the city by ordinance or resolution *shall* authorize the necessary tax levies and certify them to the county auditor, a clear mandatory duty is placed upon the city council as the taxing authority to comply with that requirement, and *mandamus* will lie to compel the council to so act. *See, also, State, ex rel. Foster,* v. *Board of County Commissioners* (1968), 16 Ohio St. 2d 89 [45 O.O.2d 442]; *State, ex rel. Scott,* v. *Masterson* (1962), 173 Ohio St. 402 [20 O.O.2d 36]." (Emphasis sic.)

It is thus well-settled that where the legislative body of a municipality is under a clear legal duty to take action consistent with an express provision of the Ohio Constitution, state statute, or municipal charter, that this legislative body is subject to a writ of mandamus enjoining such action.

In the case at bar, the pertinent state statute expressly provides that "[l]ocal authorities * * * *shall* place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices * * *." R.C. 4511.11(A). This statute imposes a clear and mandatory duty upon "[l]ocal authorities." "Local authorities" is defined as including any "local board or

body having authority to adopt police regulations." R.C. 4511.01(AA). This definition includes the Council of the village of Linndale. Thus, under R.C. 4511.11(A), the Linndale Village Council is under a clear and mandatory duty to comply with the Department of Transportation manual, when it erects "traffic control devices" upon a "highway." West 117th Street is clearly a "highway" within the meaning of R.C. 4511.01(BB), *supra,* and the "Stop Here on Red" sign and stop line are clearly "traffic control devices" under R.C. 4511.01(QQ), *supra.* Accordingly, the Linndale Village Council has a clear and mandatory duty to conform its "Stop Here on Red" sign and stop line to the Department of Transportation manual.

The Ohio Legislature has expressly enjoined local ordinances which conflict with the Department of Transportation manual on traffic control devices. This is similar to the charter provision in *State, ex rel. Neelon,* v. *Locher, supra,* and the state statute in *State, ex rel. Campanella,* v. *Kucinich, supra,* which expressly required the city council to take particular action under certain circumstances. We are persuaded that an order from this court directing the Linndale Village Council to conform the ordinance in question to the requirements of the manual of the state Department of Transportation will not interfere with the exercise of its legislative discretion, because the village council has no discretion to erect nonconforming traffic control devices on highways. This court may not specify how the traffic control device is to be brought into conformity with the manual, since there are several methods available by which this might be accomplished, and it is within the discretion of the Linndale Village Council to choose the method it

prefers. The respondents' first proposition is not well-taken.

## II

Respondents' Proposition No. 2:

"Mandamus does not lie where respondent has no clear legal duty to act."

Respondents contend that under the Home Rule Amendment to the Ohio Constitution (Section 3, Article XVIII), and under R.C. 4511.07, that the village of Linndale has authority to erect traffic control devices which conflict with R.C. 4511.11 and the Department of Transportation manual.

The Home Rule provision states:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The Supreme Court recently defined the term "general laws" as follows:

"* * * A statute which sets forth police, sanitary and similar regulations uniformly statewide is a general law for purposes of Section 3, Article XVIII of the Ohio Constitution." *Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363, 368 [20 O.O.3d 327].

R.C. 4511.11(A) is manifestly intended to create a statewide, uniform regulation of traffic control devices. The necessity for such uniformity is obvious. A small municipality could erect a nonconforming traffic control device for the sole purpose of entrapping motorists and extracting fines.[2] Furthermore, nonuniformity of traffic control devices confuses drivers and enhances the risk of accidents. It is our considered opinion that the Home Rule provision does not grant to municipalities the power to disregard R.C. 4511.11, in the erection of traffic control devices.

Similarly, we are persuaded that R.C. 4511.07 is not intended to authorize a village to evade the requirements of the Department of Transportation manual on

---

[2] The fine imposed by the Linndale Village Council for violation of the ordinance in question is fifty dollars.

traffic control devices. R.C. 4511.07 provides in part:

"Sections 4511.01 to 4511.78, 4511.99, and 4513.01 to 4513.37 of the Revised Code do not prevent local authorities from carrying out the following activities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power:

"(A) Regulating the stopping, standing, or parking of vehicles, trackless trolleys, and streetcars;

"(B) Regulating traffic by means of police officers or traffic control devices."

On its face, R.C. 4511.11 does not "prevent" the village of Linndale from "[r]egulating traffic by means of * * * traffic control devices." R.C. 4511.11 merely establishes guidelines for the village of Linndale to follow in regulating traffic by means of traffic control devices. The village of Linndale is free to regulate the flow of traffic within its boundaries, so long as its traffic control devices conform to the statewide uniform standard. R.C. 4511.11 is not in conflict with R.C. 4511.07.

The respondents also assert, in their second proposition, that the Linndale police chief is not a proper party in this action. We agree. R.C. 4511.11 only imposes a duty upon "local authorities," *i.e.,* the "local board or body having authority to adopt police regulations," regarding the placement of traffic control devices. It is the Council of the village of Linndale which, by ordinance, placed the "Stop Here on Red" sign and stop line at an unlawful distance from the intersection. Thus, the Chief of Police is not a proper party to this action, and this court has dismissed him as a party respondent.[3]

III

Respondents' Proposition No. 3:

"Relator Ohio Motorist Association has no beneficial interest in the relief sought and is without legal capacity to maintain this action."

R.C. 2731.02 provides in part:

"The writ of mandamus may be allowed by the supreme court, the court of appeals, or the court of common pleas and shall be issued by the clerk of the court in which the application is made. Such writ may issue on the information of the party *beneficially interested.*" (Emphasis added.)

Respondents contend that the Ohio Motorists Association lacks standing to sue the Linndale Council to enforce compliance of traffic regulations with the general laws of Ohio, because the association lacks a "beneficial interest" in the outcome of this suit. We note that a "beneficial interest" is not the same as the requirement that a party be a "real party in interest," under Civ. R. 17. In an action in mandamus, where the relator seeks to enforce a public right, the people of the state of Ohio are regarded as the real party:

" '* * * where the question is one of public right and the object of the mandamus is to procure the enforcement of public duty, the people are regarded as the real party and the relator need not show that he has any * * * special interest in the result, since it is sufficient that he is interested as a citizen or taxpayer in having the laws executed and the duty in question enforced * * *.' " *State, ex rel. Nimon,* v. *Village of Springdale* (1966), 6 Ohio St. 2d 1, 4 [35 O.O.2d 1], quoting 35 Ohio Jurisprudence 2d 426, Section 141.

The relator and the intervening-relator are citizens of the state of Ohio,[4]

---

[3] In a journal entry by this court dated November 30, 1982, the Chief of Police of the village of Linndale was dismissed as party respondent.

[4] In some contexts, corporations are not considered to be "citizens," see *Horn Silver Mining Co.* v. *New York* (1892), 143 U.S. 305 (Privileges and Immunities Clause), whereas in

and are manifestly interested in having the traffic laws of the state of Ohio executed uniformly. This court is, therefore, persuaded that relators have standing to maintain this suit in mandamus. The respondents' third proposition is not well-taken.

Accordingly, the application for a writ of mandamus is granted. Respondents are ordered to conform the traffic stop sign and stop line in controversy with the Ohio Department of Transportation Manual and Specifications for a Uniform System of Traffic Control Devices.

*Writ granted.*

DAY and MARKUS, JJ., concur.

---

other contexts corporations *are* considered to be "citizens," see Section 1332(c), Title 28, U.S. Code (corporation as citizen for purposes of diversity jurisdiction). We are persuaded that an Ohio corporation may have as great an interest as a natural person in seeking the just enforcement of state laws, and may be considered to be a citizen of the state of Ohio entitled to institute an action in mandamus.