**In re 730 CHICKENS, Alleged Forfeited Property.**

[Cite as *In re 730 Chickens* (1991), 75 Ohio App.3d 476.]

Court of Appeals of Ohio,
Vinton County.

No. 472.

Decided Aug. 9, 1991.

John G. Gosling, Prosecuting Attorney, for appellee.

John P. Lavelle, for appellants.

J. Robert Andrews, urging affirmance for amicus curiae, The Humane Society of the United States.

HARSHA, Judge.

This is an appeal from a judgment entered by the Vinton County Court which granted an application for forfeiture of seven hundred thirty chickens seized by the state of Ohio, appellee, pursuant to a search warrant and ordered the humane destruction of the chickens.

Appellants, Phillip Fleming and the Ohio Gamefowl Breeders Association ("OGBA"), who were never made parties to the forfeiture proceedings, assign the following errors:

"ASSIGNMENT OF ERROR I:

"The order of forfeiture issued by the Vinton County Court is contrary to law because the mandates of revised code Section 2933.41 pertaining to notice and service were not complied with."

"ASSIGNMENT OF ERROR II:

"The judgment of forfeiture should be reversed as it pertains to Phillip Fleming and members of Ohio Gamefowl Breeders Association because it amounts to a second criminal offense which the state failed to seek prior to sentencing."

On May 11, 1991, approximately seven hundred thirty chickens were seized pursuant to a search warrant as evidence of cockfighting, in violation of R.C. 959.15, and gambling, in violation of R.C. 2915.02. On May 13, 1991, a hearing was held in the Vinton County Court, and the trial court judge admonished the people in the courtroom as follows:

"What I assume that of those here today as spectators may have some interest in this, I think it would [*sic*] appropriate to make a generalised [*sic*] announcement to those of you in the court room. Here and now will be the time to set forth the claim with any property interest that you may have. " * * *

"You should be aware that there is a possibility of additional criminal charges that may be filed out of this. If you wish to consult with your attorney about that, probably you should do so fortwith [*sic*]. This is a civil proceeding, not a criminal proceeding today, and it is a question what to do with the property that had been seized under the Search Warrant. However, the allegation which the state makes that the property that is sought to be forfeited or be destroyed is contra-band [*sic*]. If you claim an interest in contra-band [*sic*] and if you fit within the meaing [*sic*] of the statute, in other words putting a claim in the chickens, while in the process of a chicken fight, if you make that claim, you may [*sic*] submitting yourself to possible and additional criminal charges, as well. With that I think we will recess for a few moments, and anyone that who [*sic*] wants to assert a property interest in the chickens and feels that they are not subject to criminal liability may do so, given a few minutes to get the paper work put down, we will proceed after that."

After a brief recess, appellants' counsel entered an appearance and stated the following:

"Thank you, Your Honor for affording me the opportunity to speak on this question. As the Court is aware, I have been retained to represent one individual who was charged with a felony offense out of the weekend events, and that is Mr. Ray Johonson [*sic*], the owner of the property in question. In addition to that, I have been retained to represent the Ohio Gamefowl Breeders Association. Many of the individual constituent members are present here in the court room. I am not individually representing any claim of property owners, but in the absence of an objection, I would like to make a statement on some of these affected parties [*sic*] behalf."

Appellants' counsel then asserted that the notice of the forfeiture proceeding was improper and that some owners of the chickens did not have any knowledge that they were going to be used in an illegal activity. The trial court agreed with appellants' counsel that it was not illegal in itself to own one of the subject chickens, and again emphasized that it was "fair to warn people * * * that a chicken can be owned legally or illegally and depending on the circumstances of that particular individual—if you own it illegally and assert some claim for it * * * then you are letting yourself open for additional criminal charges."

Subsequently, appellee's counsel represented to the trial court that officers present at the cockfighting event held on May 11, 1991 notified everybody present that the chickens would be the subject of a forfeiture application and that anyone who had an interest in the chickens should state his claim to the officers. Appellee's counsel further stated as follows:

"Other than that, not very many people came forward and this left us then with a tremendous number of apparently unclaimed or ownerless birds, which is possible in a situation like this—when folks elect not to step forward and acknowledge the possible ownership of what could be construed criminal tools or evidence of a criminal activity. How someever [sic] none of that would act to deny an opportunity to now come forward once again as I stated before, it would be the states [sic] reception [sic] that now is the time and I am here ready and I was before I attempted to address these fellows before we called the judge back in and you said no, you got a statement."

The trial court then asked whether any individual desired to set forth a claim in the chickens, and appellants' counsel responded as follows:

"Does anyone here want to come forth and claim the chickens, under the circumstances that were described earlier and recognize their interest, if you do I would recommend that you come forward and do that now? Your Honor, I am advised by the trustees and officers of the Ohio Gamefowl Breeders. Assoication [sic] that the individual owners of these chickens are all members of this group and they are asking me as the association attorney to make a claim on all of the chickens, on behalf of the association. I think with adadmisision [sic] that were given here today and I commend the prosecution of [sic] doing this. It has scared some of these people off from lawfully claiming what might well be legal property, and they have asked the association to make the plea in general for the chickens and the last thing that they want to see is the chickens destroyed. That is just as specific as I can be."

The trial court noted that it appeared that OGBA, a non-profit corporation, was asserting "some claim of ownership" and that an affidavit regarding the

forfeiture should therefore be served on OGBA. The trial court then continued the forfeiture proceeding.

On May 14, 1991, in the related criminal proceeding, appellants' counsel entered a plea of no contest to charges of cockfighting in violation of R.C. 959.15 on behalf of sixty-nine individuals who are unspecified in the record before this court. The trial court orally sentenced these individuals by fining them $25 plus court costs. No journal entry of these sentences is contained in the record.

On May 15, 1991, Vinton County Sheriff Delno L. McClure filed a "VERIFIED APPLICATION FOR THE DISPOSITION OF FORFEITED/UNCLAIMED PROPERTY" in which he stated that: (1) the seven hundred thirty chickens were seized pursuant to a search warrant as evidence of cockfighting and gambling; (2) during the execution of the search warrant, everybody present was orally advised and issued a written notice to any individuals requesting further notice of a May 13, 1991 hearing regarding the disposition of the seized chickens; and (3) the chickens' violent propensity presented a severe security problem and continued care and preservation of the chickens was both difficult and expensive. Sheriff McClure's application requested that the chickens be declared unclaimed or forfeited property pursuant to R.C. 2933.41(D) and that they be "disposed of in a humane manner" pursuant to R.C. 2933.41(D)(8).

On May 15, 1991, the forfeiture proceeding continued and Ohio Department of Agriculture enforcement supervisor Steve Mowery testified that the confiscated chickens were of a violent nature and that they were used in a criminal activity, *i.e.*, cockfighting, when seized. Mowery testified that if the court directed that the chickens be destroyed, his agency could supervise and insure a humane disposition. When appellants' counsel began cross-examining Mowery, the following exchange occurred:

"*MR. GOSLING:*

"I guess for purpose of record—I guess I am not sure of Mr. Lavelle's standing but I will probably object unless there has been some determination made of that.

"*JUDGE BRAME:*

"Q. Are you appearing on behalf of any particular individual or any organization Mr. Lavelle?

"*ATTORNEY LAVELLE:*

"A. Yes your honor. At this particular time I am appearing on behalf of the Ohio Gamefowl Breeders Association.

"*JUDGE BRAME:*

"Q. Is that organization making a claim to ownership or possession of these birds?

"*ATTORNEY LAVELLE:*

"A. Not at this time, no."

The trial court noted that even though OGBA was not entering a claim of ownership of the chickens, it would allow OGBA to proceed on an *amicus curiae* basis.

On May 16, 1991, the court below entered a judgment declaring that: (1) the chickens were unclaimed and duly forfeited pursuant to R.C. 2933.41; (2) alternatively, they constituted contraband pursuant to R.C. 2933.42 and were subject to disposition by R.C. 2933.43; and (3) since sale of the subject chickens would likely reintroduce the chickens into the scheme of cockfighting, the chickens should be humanely destroyed. Appellants filed a notice of appeal on the same day that judgment was entered as well as a motion for stay of the trial court judgment. In appellants' motion for stay, it was stated that Phillip Fleming and other members of the OGBA claimed ownership of the chickens and further stated that they did not claim ownership during the forfeiture proceedings "for fear of additional criminal prosecution." This court granted a stay pending disposition of this appeal and further allowed the Humane Society of the United States to file an *amicus curiae* brief.

Initially, appellee and the Humane Society assert that we cannot reach the merits of the instant appeal because neither of appellants asserted an ownership claim during the proceedings below. In order to have a right to appeal, one ordinarily must have been a party to the case in the trial court or attempted to intervene as a party. Whiteside, Ohio Appellate Practice (1987) 14, Section 3.13; *State ex rel. Lipson v. Hunter* (1965), 2 Ohio St.2d 225, 31 O.O.2d 453, 208 N.E.2d 133. In other words, "appeal lies only on behalf of a *party* aggrieved by the final order appealed from" and "[a]ppeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant." (Emphasis added.) *Ohio Savings Bank v. Ambrose* (1990), 56 Ohio St.3d 53, 55–56, 563 N.E.2d 1388, at fn. 3, citing *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus.

In the case at bar, OGBA initially claimed ownership of the chickens on May 13, 1991, but then declined to assert an ownership interest in the chickens on May 15, 1991 and proceeded on an *amicus curiae* basis. Additionally, there is no evidence in the proceedings below that Fleming ever claimed ownership of the chickens although in appellants' motion for stay, it is asserted that he was present at the forfeiture proceedings. Indeed, appellants' counsel never asserted below that he represented Fleming.

██ While not explicitly denominated as such, OGBA's counsel's state-ments to the trial court were essentially a motion to intervene pursuant to Civ.R. 24. In this regard, we recognize that Civ.R. 24(C) requires service of a written intervention motion. However, in the case at bar, where the only application for forfeiture in the record was filed *on the same day* that the final hearing on the application was held, we are not persuaded that strict compliance with Civ.R. 24(C) was required. To hold otherwise would preclude potential owners of seized property from being afforded the preparation time that common precepts of constitutional due process mandate. The record below indicates that OGBA's counsel initially asserted an ownership right on behalf of its members but then, shortly after the application was filed, declined to assert the right of ownership when pressed by the trial court and appellee.

██ In order to have standing to appear in a representative capacity for its members, an association must meet the standards set forth in *Warth v. Seldin* (1975), 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343, and *Hunt v. Washington Apple Advertising Comm.* (1977), 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383. See *Academy of Nursing Homes v. Barry* (1987), 37 Ohio App.3d 46, 523 N.E.2d 523. An association has standing when: (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. R.C. 2307.27 provides that a person may intervene in a private action for recovery of personal property if he has an *interest* in the property. Moreover, Civ.R. 24(A) allows intervention of right when a state statute confers an *unconditional* right to intervene.

In *Daughtry v. Mobile County Sheriff's Dept. ex rel. Purvis* (Ala.1988), 536 So.2d 953, the Supreme Court of Alabama held that a person claiming an interest in, *inter alia*, roosters seized during a raid of an alleged cockfight lacked standing to appeal a forfeiture entry ordering the destruction of the roosters. However, the *Daughtry* court emphasized that Daughtry had never intervened during the forfeiture proceedings and that he initially asserted his ownership rights in the seized roosters in his appellate brief. Furthermore, the *Daughtry* court held that motions and other actions should be "[v]iewed in the most liberal fashion" in determining whether an appellant had sought to intervene below so as to confer standing on appeal. *Id.* at 955, fn. 1. Conversely, in viewing the actions of OGBA in the "most liberal fashion" in the case at bar, it is manifest that at the initial hearing regarding the forfeiture proceeding, it asserted an ownership right in the seized chickens on

behalf of its members. Indeed, at the conclusion of that hearing, even the court below noted the following:

"I am not addressing the merits of [the] claim of ownership, it sounds to me like *the corporation is making some claim of ownership.* There is the *party* which I suppose that you should proceed against." (Emphasis added.)

■ By subsequently holding that the chickens were contraband, the trial court should have acknowledged that pursuant to R.C. 2933.43(C), OGBA was then entitled to at least four weeks' preparation time from the service of notice until the forfeiture hearing. See the disposition of appellants' first assignment of error, *supra.* Instead, the trial court proceeded to hold the hearing on the very day that the forfeiture application was filed. Given the extraordinary speed with which the trial court proceeded, in contravention of R.C. 2933.43(C), OGBA's counsel did not have the benefit of the statutorily prescribed time between notice and the date of the forfeiture hearing to sufficiently prepare a defense and a formal motion to intervene. OGBA's counsel explicitly objected at the initial hearing that the proceedings were "moving too fast." Accordingly, for the foregoing reasons, we are persuaded that OGBA's actions were tantamount to a motion to intervene in the court below. Cf., *e.g., In re Property Seized from Aronson* (Iowa 1989), 440 N.W.2d 394, where the Iowa Supreme Court held that a claimant lacked standing to appeal a cockfight forfeiture entry, *but* in such case, the claimant never attempted to intervene in the forfeiture proceedings *and* the statutorily prescribed notice procedure was rigidly followed (*i.e.,* the notice of forfeiture was filed on September 21, 1987 and the forfeiture hearing was held on November 17, 1987).

■ Consequently, OGBA's actions, viewed in a most liberal fashion, constituted an intervention motion sufficient to satisfy the standing requirement provided OGBA was sufficiently "aggrieved" as discussed below. However, with respect to Fleming, there is no evidence in the record of the proceedings below either that OGBA's counsel represented him during those proceedings or that Fleming was even present. Accordingly, Fleming has no standing to appeal. See, *e.g., Januzzi v. Hickman* (1991), 61 Ohio St.3d 40, 45, 572 N.E.2d 642.

■ As to whether OGBA is sufficiently "aggrieved" to have standing on appeal, it is uncontroverted that OGBA is claiming an ownership interest in the chickens in a representative capacity on behalf of its members. Although the Humane Society contends that OGBA has an insufficient interest in the chickens, we note that an association, even in the absence of injury to itself, has standing to sue as representative of its members as long as it alleges that

at least one of its members is suffering immediate or threatened injury as a result of the contested action. *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211, 45 L.Ed.2d at 361; *Pennsylvania Gamefowl Breeders Assn. v. Commonwealth* (Pa.Cmwlth.1987), 533 A.2d 838. During the proceedings held upon the application below, OGBA orally alleged that its members owned the chickens and, further, that its members did not want the chickens destroyed.

The dissent contends that OGBA cannot satisfy the standing requirements of *Warth* and *Barry* since the individual participation of its members is required due to the nature of the claim and/or the relief being sought. However, this is not a case where the association seeks damages on behalf of various members whose injuries may vary in specific amounts, thus requiring their individual participation. Rather, the state seeks enforcement of the statutory forfeiture provisions of R.C. Chapter 2933 against all chickens in its possession. Appellants contest the authority of the trial court to order destruction under that statutory scheme and complain of failure to comply with due process and statutory notice requirements. The outcome of this case does not turn on factual matters that are unique to certain individual members of the association that would require their participation. The questions before the trial court and this body are essentially legal in nature, not factual. Accordingly, individual participation was not required.

The close issue in this case is not whether OGBA can satisfy the legal test put forth in *Warth, supra* and *Hunt, supra,* for surely it does. Rather, the real question is whether it actually asserted those associational rights before the trial court in a manner sufficient to entitle it to proceed on behalf of its members. Given the procedural deficiencies and summary manner of the trial court proceedings, we are convinced that OGBA's imprecise attempt to intervene was sufficient to allow this case to proceed on the merits. Based upon the foregoing, we hold that OGBA possesses the requisite standing to appeal the judgment entered by the court below.

Appellants' first assignment of error asserts that the trial court erred in ordering forfeiture since the provisions of R.C. 2933.41 pertaining to notice and service were not satisfied. Appellants additionally argue under their first assignment of error that the forfeiture provisions contain no authority to destroy live animals, and therefore, the trial court erred in ordering the chickens' destruction.

In the case at bar, the trial court determined that the seized chickens were *both* unclaimed and duly forfeited pursuant to R.C. 2933.41 and that they were contraband subject to disposition pursuant to R.C. 2933.43. The trial court further determined that "sufficient actual notice of the intended filing of the * * * application for disposition of forfeited property was made

by Law Enforcement Officers and the media to potential claimants." We initially note the court erred in applying R.C. 2933.41 to the May 15, 1991 application where that section refers only to "[a]ny property, other than contraband that is subject to the provisions of section 2933.43 of the Revised Code," since the court expressly determined that the chickens *were* contraband.

With respect to notice, R.C. 2933.43(C) provides, in pertinent part:

"The petitioner shall conduct or cause to be conducted a search of the appropriate public records that relate to the seized property for the purpose of determining, and shall make or cause to be made reasonably diligent inquiries for the purpose of determining, any person having an ownership or security interest in the property. *The petitioner then shall give notice of the forfeiture proceedings by personal service or by certified mail, return receipt requested, to any persons known, because of the conduct of the search, the making of the inquiries, or otherwise, to have an ownership or security interest in the property, and shall publish notice of the proceedings once each week for two consecutive weeks in a newspaper of general circulation in the county in which the seizure occurred. The notices shall be personally served, mailed, and first published at least four weeks before the hearing.* They shall describe the property seized; state the date and place of seizure; name the law enforcement agency that seized the property and, if applicable, that is holding the property; list the time, date, and place of the hearing; and state that any person having an ownership or security interest in the property may contest the forfeiture." (Emphasis added.)

In the case at bar, it is obvious that the foregoing statutory procedure was not followed. Personal service of Sheriff McClure's May 15, 1991 application for forfeiture was not attempted on those individuals arrested at the cockfight event. Moreover, no publication pursuant to the statute was made. Finally, R.C. 2933.43(C) indicates that the notices must be "served, mailed, and first published at least four weeks before the hearing." Conversely, the only notice in the record is either the testimony and affidavit concerning a May 11, 1991 notification of the cockfight spectators or the May 15, 1991 application. The forfeiture hearing was held on May 15, 1991. Although appellants did receive actual notice of the hearing, as we noted previously, appellants' counsel repeatedly noted during the proceedings below that the hearings were "going to[o] fast here." Under these circumstances, it cannot be said that less than one day to arguably up to four days' notice of a forfeiture proceeding pursuant to R.C. 2933.43(C) sufficiently gives potential claimants the statutory "four weeks before the hearing" necessary to fully

prepare their case. Accordingly, we find appellants' first contention under their first assignment of error to be meritorious.

 We turn now to the trial court's order to destroy the chickens. R.C. 2933.43 provides in part:

"(D)(1) Contraband ordered forfeited pursuant to this section shall be disposed of pursuant to divisions (D)(1) to (7) of section 2933.41 of the Revised Code or, if the contraband is not described in those divisions, may be used, with the approval of the court, by the law enforcement agency that has custody of the contraband pursuant to division (D)(8) of that section. In the case of contraband not described in any of those divisions and of contraband not disposed of pursuant to any of those divisions, the contraband shall be sold in accordance with this division or, in the case of forfeited moneys, disposed of in accordance with this division. If the contraband is to be sold, the prosecuting attorney shall cause a notice of the proposed sale of the contraband to be given in accordance with law, and the property shall be sold, without appraisal, at a public auction to the highest bidder for cash."

R.C. 2933.41(D)(1) to (7), referring to items such as drugs, firearms, obscene materials, alcohol, money, vehicles, and computers, are inapplicable in the case at bar. Therefore, since the law enforcement agency with custody of the chickens did not want to use the chickens, they were statutorily mandated to sell the chickens pursuant to R.C. 2933.43(D). Assuming, *arguendo*, that the trial court was not limited to the options provided in R.C. 2933.43(D) as a result of its express finding that the chickens were contraband, we are unpersuaded that R.C. 2933.41(D)(8)'s catchall disposition option allowing the disposal of seized property "in another manner that the court considers proper in the circumstances" would have allowed the destruction of the chickens. As appellants aptly note, the West Virginia Supreme Court has held that absent any *specific* statutory authorization, a court may not order the destruction of chickens seized for illegal cockfighting, by stating as follows:

"In West Virginia, penal statutes are strictly construed. *State v. Vandall*, 170 W.Va. 374, 294 S.E.2d 177 (1982); *Dials v. Blair*, 144 W.Va. 764, 111 S.E.2d 17 (1959); *Clear Fork Coal Co. v. Anchor Coal Co.*, 105 W.Va. 570, 144 S.E. 409 (1928). Generally, penal statutes will not be extended by construction, but must be limited to cases clearly within its language and spirit. *Myers v. Murensky*, 162 W.Va. 5, 245 S.E.2d 920 (1978). If the legislature desired to allow the destruction of gamecocks, it could have specifically authorized such destruction.

"Thus, absent any specific statutory authorization, a court may not order destruction of the birds in question. Although we have discussed other

related statutory authority, none explicitly provides for the destruction of gamecocks.

"We recognize the irony of not allowing the gamecocks to be humanely destroyed in light of the fact that they cruelly kill each other during cockfighting. It is not our function, however, to rewrite the pertinent penal statute to authorize the humane destruction of gamecocks seized as the result of illegal cockfighting." *Ray v. Mangum* (1986), 176 W.Va. 534, 346 S.E.2d 52, at 54–55.

As with the West Virginia statutes pertinent in *Ray*, neither R.C. 2933.41(D) nor 2933.43(D) specifically authorizes the killing of live animals; the enumerated categories in R.C. 2933.41(D)(1) to (7) all refer to inanimate, non-living, personal property. Based upon the rationale of *Ray* and the applicable Ohio statutes, we hold that R.C. 2933.41(D)(8)'s catchall clause was not intended to refer to destruction of live animals, such as the seized chickens. If the General Assembly had desired to give courts this option in forfeiture proceedings, it would have done so by express language. Consequently, the trial court erred in ordering the destruction of the chickens where such destruction was not authorized by either of the arguably relevant statutes. Appellants' first assignment of error is sustained.

██ Appellants' second assignment of error asserts that the forfeiture judgment should be reversed because it amounts to a second criminal offense which appellee failed to seek prior to sentencing. Where property is ruled contraband pursuant to R.C. 2933.42(B), forfeiture of that property pursuant to R.C. 2933.43 constitutes a separate criminal penalty in addition to the penalty the defendant faces for conviction of the underlying felony. *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 569 N.E.2d 916, syllabus. The forfeiture violates both the Ohio and United States Constitutions where the state fails to seek forfeiture prior to the sentencing on the underlying criminal offense. *Id.* at 183, 569 N.E.2d at 921.

██ *Casalicchio* is arguably inapposite to the case at bar where Mowery's testimony indicated that appellee had sought the forfeiture and destruction of the chickens prior to the May 14, 1991 sentencing on the underlying cockfighting charges. However, we need not decide this issue. An appellate court will not consider any error, including constitutional error, which counsel for a complaining party could have, but failed to call to the trial court's attention at a time when such error could have been avoided by the trial court. *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524, 526; *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201, 489 N.E.2d 277, 279. Appellants could have, but failed to raise the double jeopardy issue below and further, unlike *Casalicchio, supra,* 58 Ohio St.3d at 183, 569

N.E.2d at 921, fn. 4, appellants did not "steadfastly maintain[ ] the unconstitutionality of the forfeiture" during the proceedings below. To the extent that appellants would have raised this issue if afforded the appropriate statutory notice and prehearing time to prepare, this is addressed in our disposition of their first assignment of error. Appellants' second assignment of error is overruled.

In that we have sustained appellants' first assignment of error, the judgment entered by the court below is reversed and remanded for further proceedings consistent with this opinion with respect to OGBA. The appeal is dismissed as to Fleming.

*Appeal dismissed in part*
*and judgment reversed.*

GREY, J., concurs.

ABELE, J., dissents.

GREY, Judge, concurring:

I concur in the judgment and opinion, but the issue of standing is of such importance that it bears further comment.

The procedure to be followed in a forfeiture action is clearly set out in R.C. 2933.43(C). Basically, it requires that a legal officer seeking forfeiture must first seek out persons who might have an ownership interest in the property, for example by doing a search of title records. Then the officer must send notice by certified mail to any person known to him to have an interest "because of the conduct of the search, the making of inquiries, or *otherwise* * * *." (Emphasis added.) And even then, it also requires that notice of the forfeiture be published in a newspaper so that other persons about whom the officer is unaware can have the opportunity to appear and assert their interests. The legislature chose to use very broad language in describing those to be served.

In this case, there was no attempt at all to obey the notice provisions of the statute, but appellee claims appellants have no standing. Let us suppose the statute had been followed. If a person had received notice by certified mail, he would have had standing to appear in court and assert his interest, if any. If a person had seen the notice published in the newspaper, he too would have had the standing to come into court and assert his interest. Simply put, it is by following the notice provisions of the statute that some persons are given standing.

Here, there was no notice, and the appellee argues in effect that, "We did not give [appellants] notice, so they do not have standing." This argument is

absolutely untenable. Under that interpretation of the statute, the true owner, sometimes the innocent owner, has no standing to object to a procedure which is void *ab initio*. The dissent argues, not unreasonably, that a true owner has an adequate remedy by bringing an action after the defective forfeiture procedure. I would argue that this creates an unnecessary multiplicity of suits, and that it is a better policy to insist that the law be followed as written in the first instance.

I will concede that at the hearing on May 15th, appellants did not present their case as positively and completely as possible. However, I would attribute any failure to the hurried procedure of the trial court. The statute requires four weeks after notice, yet here the hearing was set the very day of the petition. Counsel for appellants objected to this rush to judgment, and whatever else clearly demonstrated that he represented people who were, as described in the statute, making inquiries.

I would hold that unless and until the officer seeking forfeiture can show that he has complied with the notice provisions of R.C. 2933.43, he is estopped to raise the issue of standing against any person who appears and asserts an interest. Thus, I concur.

PETER B. ABELE, Judge, dissenting.

I respectfully dissent.

I agree with the majority opinion that the trial court did not comply with the notice requirements set forth in R.C. 2933.43. I further agree that absent statutory authorization, a court is not permitted to order the destruction of seized property. Clearly, the Revised Code contains no such language specifically authorizing the destruction of the property. Although I am in agreement that the proceeding below was flawed because the trial court did not comply with the applicable statutes, I am not persuaded that appellants possess the requisite standing to appeal the trial court's judgment. Therefore, I believe we cannot consider the merits of this appeal and the appeal should be dismissed.

I

It is undisputed that appellee did not, pursuant to R.C. 2933.43(C), provide notice of the forfeiture proceeding to those persons who may have an ownership interest in the seized property.[1] Appellee asserts the owners of the

---

1. R.C. 2933.43 provides, in pertinent part, " * * * the petitioner * * * shall make or cause to be made reasonably diligent inquiries for the purpose of determining, any person having an ownership or security interest in the property. The *petitioner* then *shall give notice of the*

seized property received "actual notice" of the forfeiture proceeding at the time the property was seized. If it could be established that all owners of the seized property received actual notice of the proceeding, this assertion may have merit.[2] However, after a review of the proceeding below, I agree with the majority that this assertion is not well taken.

The record does not reveal whether all persons who may have an ownership interest in the property, whether or not present during the actual seizure of the property, received notice of the forfeiture proceeding. The purpose of the publication of notice is to ensure that all owners of seized property receive notice that their property is the subject of a forfeiture proceeding. I recognize that in the instant case the nature of the seized property may create

---

*forfeiture proceedings by personal service or by certified mail,* return receipt requested, *to any persons known,* because of the conduct of the search, the making of inquiries, or otherwise, to have an ownership or security interest in the property, *and shall publish notice of the proceedings once each week for two consecutive weeks in a newspaper of general circulation in the county in which the seizure occurred. The notices shall be personally served, mailed, and first published at least four weeks before the hearing.* They shall describe the property seized; state the date and place of seizure; name the law enforcement agency that seized the property and, if applicable, that is holding the property; list the time, date, and place of the hearing; and state that any person having an ownership or security interest in the property may contest the forfeiture. * * * " (Emphasis added.)

**2.** In *Dept. of Liquor Control v. Amvets Post 1315* (Mar. 15, 1991), Henry App. No. 7–90–1, unreported, 1991 WL 34905, the Third District Court of Appeals reviewed a proceeding that involved the seizure and forfeiture of slot machines, poker machines and dice mats seized during the search of Amvets Post 1315. In one of the assignments of error, appellants asserted the Henry County Common Pleas Court lacked jurisdiction to determine the matter because appellee failed to comply with the publication of notice of the forfeiture proceeding requirement pursuant to R.C. 2933.43(C). The court wrote:

"The public notice given by appellee deviated from the statutory dictates in several regards. First, rather than being published once each week for two consecutive weeks, the notice was published two consecutive days in one week. Furthermore, the publication was not made at least four weeks prior to the forfeiture hearing as required by R.C. 2933.43(C). While it is abundantly clear that the public notice in this case was deficient, we are not prepared to accept appellants' argument (particularly in light of the fact that each defendant was served with notice of the proceedings by certified mail) that these deficiencies deprived the trial court of the jurisdiction granted under R.C. 2933.43 to determine forfeiture actions."

*Amvets Post 1315* is distinguishable from the case *sub judice.* First, in the case at bar appellee did not provide any notice by publication as mandated by R.C. 2933.43(C). Second, in *Amvets Post 1315* it was established that all the owners of the property were provided notice of the forfeiture proceeding by certified mail. In the case at bar, there is nothing in the record that establishes that all persons who have an ownership interest in the seized property were notified of the forfeiture proceeding. The trial court stated that:

" * * * sufficient actual notice of the intended filing of the aforesaid application for disposition of forfeited property was made by Law Enforcement Officers and the media to potential claimants, as envisioned by Section 2933.41(B) R.C."

Thus, the trial court assumed that all owners of the property were either at the scene of the seizure or learned of the seizure through media coverage. This is an assumption that is not permitted by the statute or supported by the evidence adduced below.

substantial difficulties in locating those who may have an ownership interest in the property. Nevertheless, that is precisely the reason the statute requires the publication of notice. Thus, after a review of the record, I believe the notice of the forfeiture proceeding was deficient both upon statutory grounds and constitutional due process grounds.

## II

I dissent because I am not persuaded appellants have standing to appeal the trial court's judgment. Ordinarily, to have a right to appeal one must have been a party to the case in the trial court or at least have attempted to intervene as a party. *State ex rel. Lipson v. Hunter* (1965), 2 Ohio St.2d 225, 31 O.O.2d 453, 208 N.E.2d 133. One must be able to demonstrate that one has a present interest in the litigation and that the lower court's judgment caused prejudice. *In re Love* (1969), 19 Ohio St.2d 111, 48 O.O.2d 107, 249 N.E.2d 794. A "real party in interest" is one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, *West Clermont Edn. Assn. v. West Clermont Local Bd. of Edn.* (1980), 67 Ohio App.2d 160, 21 O.O.3d 457, 426 N.E.2d 512, that is, one who is *directly* benefitted or injured by the outcome of the case. *Id.*

An association, under certain circumstances, may have standing to represent the members of its association. In *Ohio Academy of Nursing Homes v. Barry* (1987), 37 Ohio App.3d 46, 47, 523 N.E.2d 523, 524–525, the court wrote:

"A party has standing to invoke the jurisdiction of the court if he has, in an individual or representative capacity, some real interest in the subject matter of the action. *State ex rel. Dallman v. Court of Common Pleas* (1973), 35 Ohio St.2d 176 [64 O.O.2d 103, 298 N.E.2d 515] * * *. *An association has standing to bring suit on behalf of its members,* whether the association is incorporated or unincorporated, *when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. State ex rel. Connors v. Ohio Dept. of Transp.* (1982), 8 Ohio App.3d 44, 47 [8 OBR 47, 455 N.E.2d 1331] * * *; *Fraternal Order of Police v. Columbus* (1983), 10 Ohio App.3d 1 [10 OBR 6, 460 N.E.2d 639] * * *. Both of these cases adopted the standards set forth in *Warth v. Seldin* (1975), 422 U.S. 490 [95 S.Ct. 2197, 45 L.Ed.2d 343] * * *, and *Hunt v. Washington State Apple Advertising Comm.* (1977), 432 U.S. 333, 343 [97 S.Ct. 2434, 2441, 53 L.Ed.2d 383, 394] * * *." (Emphasis added.)

See, also, *Ohio State Pharmaceutical Assn. v. Wickham* (1989), 61 Ohio App.3d 488, 573 N.E.2d 148.

Before an association can be found to have standing to assert a claim on behalf of the association's members, it must be established that: (1) its members would otherwise have standing to assert a claim in their own right, (2) the interests the association seeks to protect are germane to the organization's purpose, and (3) the nature of the claim and the relief sought is not peculiar to individual members of the association and individual participation of the members is not indispensable to the proper resolution of the action because individualized proof is not required.

In *State ex rel. Connors v. Ohio Dept. of Transp.* (1982), 8 Ohio App.3d 44, 8 OBR 47, 455 N.E.2d 1331, the court quoted and followed the following propositions of law from two seminal United States Supreme Court cases involving associational standing:

"With regard to an association's standing to represent its members in a suit, the Supreme Court has stated, in *Warth v. Seldin* (1975), 422 U.S. 490 [95 S.Ct. 2197, 45 L.Ed.2d 343] * * * that:

" '*Even in the absence of injury to itself, an association may have standing solely as the representative of its members.* * * * The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. * * * So long as this can be established, *and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.*'

"Later, the court, in *Hunt v. Washington Apple Advertising Comm.* (1977), 432 U.S. 333 [97 S.Ct. 2434, 53 L.Ed.2d 383] * * * reviewed *Warth* and stated:

" 'Thus we have recognized that *an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.*' " (Emphasis added.)

Recently, in *Internatl. Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock* (1986), 477 U.S. 274, 287, 106 S.Ct. 2523, 2531, 91 L.Ed.2d 228, 241, the court emphasized that associations do not have standing to sue on behalf of members where the fact and extent of the members' injuries require individual proof:

" * * * In *Warth*, we noted that even where the members of an association have suffered the sort of injury that might otherwise support a suit by the association, *'whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.'* 422 U.S., at 515 [95 S.Ct. at 2213, 45 L.Ed.2d at 364] * * *. An organization of construction firms, we held, could not seek damages for the profits and business lost by its members because *'whatever injury might have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof.' Id.* * * * *Each member therefore had to be a party to the suit, and the association lacked standing to proceed on his behalf."* (Emphasis added.)

Our court has previously recognized the proposition of law that where a claim requires the participation of individual members, the association lacks standing to sue on behalf of the members. In *Lake White Community Assn., Inc. v. Lucas* (Dec. 13, 1990), Pike App. No. 432, unreported, 1990 WL 253039, we wrote:

" * * * all of the members of the association would not have standing to sue in their own right since all of them were not property owners with previously assigned boat dock locations and deeds with language creating an express easement. *The claim and the relief required participation of individual members. The association did not have standing to bring suit on behalf of its members."* (Emphasis added.)

In the case *sub judice*, appellants are contesting a forfeiture proceeding conducted pursuant to R.C. Chapter 2933. Few courts have considered cases involving the issue of standing and the assertion of ownership interests in seized property. In the sole Ohio case our research recovered touching upon the issue, *Akron v. Carlson* (Mar. 11, 1987), Summit App. No. 12771, unreported, 1987 WL 7932, the court considered a motion requesting the return of confiscated evidence. Judge Joyce George wrote:

" * * * *R.C. 2933.41 permits the return of confiscated evidence only to those persons who can demonstrate that they have the right to possession. Appellants' motion does not assert any basis upon which the trial court could ascertain who had the right of possession to the confiscated evidence;* therefore, the trial court properly denied the motion. *Although appellants asserted a right of possession* on behalf of VFW Airport Post 8975 and George's Vending Company, *they failed to show their standing to apply to the trial court for the return of the property to these other possible claimants.* The trial court did not err in refusing to return the evidence upon appellants' motion * * *."* (Emphasis added.)

Judge George apparently rejected the notion that anyone other than the owner has standing to assert an ownership interest in contraband.

Also, in *Warth v. Seldin* (1975), 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343, the United States Supreme Court spoke to the relationship between associational standing and the nature of the relief sought. The court wrote:

"As noted above, to justify any relief the association must show that it has suffered harm, or that one or more of its members are injured. E.g., *Sierra Club v. Morton*, 405 U.S. 727 [92 S.Ct. 1361, 31 L.Ed.2d 636] (1972). *But, apart from this, whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.* Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. E.g. *National Motor Freight Assn. v. United States*, 372 U.S. 246 [83 S.Ct. 688, 9 L.Ed.2d 709] (1963). * * * " (Emphasis added.)

See, also, *Hunt v. Washington State Apple Advertising Comm.* (1977), 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383, and *State ex rel. Ohio Motorists Assn. v. Masten* (1982), 8 Ohio App.3d 123, 8 OBR 179, 456 N.E.2d 567, where the court held that in an action in mandamus where the relator seeks to enforce a public right, an association had standing to maintain the suit in mandamus.

The case most closely on point with the case *sub judice* involved a cockfight in Iowa. In *In re Property Seized from Ernie Edward Aronson* (Iowa 1989), 440 N.W.2d 394, the trial court ordered the forfeiture of property seized at the site of the alleged cockfight. At the forfeiture hearing, the defendants did not testify and did not identify their interest in the seized property. Fifty-seven defendants appealed seeking the reversal of the forfeiture order. In affirming the trial court's order of forfeiture, the Iowa Supreme Court wrote:

"At the hearing on forfeiture, the state presented evidence to support the forfeiture claim. *Defendants presented no evidence of their interest in any of the subject property.* Instead they exercised their constitutional right under the Fifth Amendment not to testify. In *United States v. Fifteen Thousand Five Hundred Dollars*, 558 F.2d 1359 (9th Cir.1977), the government sought a forfeiture of $15,500 from a safety deposit box allegedly used in connection with an illegal gambling business. Defendant exercised her Fifth Amendment right and never testified that she claimed any interest in the money. The court ignored defendant's claim of an illegal search and unlawful wiretap and ordered the money forfeited.

*"Where the underlying action is a civil forfeiture suit, however, none of the above bases for contesting the forfeiture is reached unless the threshold requirement of being a claimant is fulfilled. This can be done only if the person desiring to defend the action claims an ownership or possessory interest in the property seized.* It is not sufficient to have claimed merely an interest in the premises or area in which the contraband was found. \* \* \* Again, in *Baker v. United States,* 722 F.2d 517 (9th Cir.1983), the court rejected arguments put forth by defendants who lack standing. There, defendants sought damages for property forfeited by the drug enforcement administration. Fifth Amendment rights were exercised, defendants claiming they were thereby protected from having to allege a specific property interest, because of pending criminal investigations. In dismissing the case the court said:

"To have standing to contest a forfeiture, one must be a 'claimant.' *United States v. Fifteen Thousand Five Hundred Dollars* \* \* \*. 'A "claimant" is one who claims to own the article or merchandise or to have an interest therein.' *Id.; United States v. One 560 Foot Yacht Named Tahuna,* 702 F.2d 1276, 1279 (9th Cir.1983).

*"The plaintiffs are not 'claimants' because they have alleged no specific property interest in the forfeited items. They assert that claiming ownership of the forfeited items might incriminate them in pending criminal investigations for tax and welfare violations.* They contend that forcing them to choose between their privilege and their lawsuit makes assertion of the privilege 'costly.' See, e.g., *Campbell v. Gerrans,* 592 F.2d 1054, 1057 (9th Cir.1979) (litigant should not suffer a penalty for assertion of fifth amendment privilege).

"We rejected this argument in *Fifteen Thousand Five Hundred Dollars* \* \* \*. The appellant there invoked the fifth amendment when asked whether she owned the currency that the government wished to forfeit. We held that she had no standing to contest the forfeiture \* \* \*."

The case at bar presents a similar scenario. Defendants have failed to prove their interest in the property to be forfeited as required by section 809.9. We hold that in this civil proceeding various claims by defendants of violation of their constitutional rights are moot in the face of their failure to have standing to contest the forfeiture. The district court's order on forfeiture is affirmed." (Emphasis added.)

I agree with the reasoning in the Iowa case. The OGBA members cannot anonymously hide behind the association and the Fifth Amendment to seek return of the contraband.

### III

In the case *sub judice,* I submit that neither the Ohio Gamefowl Breeders Association ("OGBA") nor Phillip Fleming has standing to appeal the trial court's judgment.

First, the prerequisites to "associational standing" have not been satisfied. I readily acknowledge that associational standing is acceptable in many circumstances. Even in the absence of injury to itself, an association may have standing solely as the representative of its members. *Warth, supra,* citing *National Motor Freight Assn. v. United States* (1963), 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709. An association may indeed have the capacity to assert a claim in a representative capacity on behalf of the association's members without joining individual members as parties. However, in the case at bar, appellants have not satisfied the requirements for standing.

I believe that in the case *sub judice* the third prong of the requirements for associational standing has not been satisfied. In the case at bar, the participation of the individual owners of the seized property in the proceeding is necessary. The nature of the claims and the relief sought require the individual participation of each injured party. One cannot say that the facts and arguments that could be asserted by one person claiming an ownership interest in the property would be identical to all the other owners of the seized property.[3] The fact that individual members were reluctant to come forward and assert their ownership interest because of fear that the state would file additional criminal charges is not persuasive.

Second, the association did not assert an ownership interest in property and, therefore, is not a real party in interest or an aggrieved party. One not a party to the case and not attempting to intervene as a party during the lower court proceeding is without capacity to appeal. *State ex rel. Cincinnati Post v. Hamilton Cty. Ct. of Common Pleas* (1991), 59 Ohio St.3d 103, 107, 570 N.E.2d 1101; *State ex rel. Jones v. Wilson* (1976), 48 Ohio St.2d 349, 2 O.O.3d 471, 358 N.E.2d 605; and *In re Love, supra.* The majority treated OGBA's participation at the forfeiture hearing as a motion to intervene pursuant to Civ.R. 24. However, the OGBA did not make a claim to the ownership or possession of the property. The association stated the property in question was owned by members of the association and the members did not want the chickens destroyed. Appellants made no formal motion to intervene and the trial court issued no order granting party status. On the facts presented in

---

**3.** For example, the Ohio General Assembly drew a distinction between the owner of property who establishes that he neither knew nor should have known that the property was used, or was likely to be used, in the commission of a crime, and the criminal whose acts converted the property into contraband. See R.C. 2933.43(C).

this case, I do not believe the association's participation in the proceeding merits the finding of intervenor status. Thus, appellants do not have standing. See *Januzzi v. Hickman* (1991), 61 Ohio St.3d 40, 45, 572 N.E.2d 642, 646. In the instant case, the trial court permitted OGBA to proceed in the case on an *amicus curiae* basis.

Third, I believe the particular nature or subject matter of an action has a bearing on whether an association has standing to assert a claim. In the case at bar, the nature of the relief sought is not a declaration, injunction, or some other form of prospective relief. See *Warth, supra.* I cannot accept the proposition that an association can have standing to assert a property interest on behalf of members that own property which is the subject of a forfeiture proceeding. This is not the intended purpose of associational standing. In the case *sub judice*, the trial court determined the seized property was used in the furtherance of a criminal offense and, pursuant to R.C. 2933.42, is contraband. I believe that in a forfeiture proceeding conducted pursuant to R.C. 2933.41 *et seq.*, it is incumbent upon the actual owners of the seized property to come forward and assert their claims. See *Akron v. Carlson, supra.* In a forfeiture proceeding, owners of seized property should not be permitted to conceal themselves behind the veil of an association. Thus, the OGBA should not have standing in the forfeiture proceeding because of the nature of the action and the relief sought.

Fourth, I agree with the majority that appellant Fleming does not have standing. There is no evidence in the record that Fleming ever asserted an ownership interest in the seized property. Also, Fleming did not intervene in the action and there is nothing in the record that indicates counsel for OGBA represented Fleming during the proceeding. See *Januzzi, supra.*

## IV

The majority opinion cites *Pennsylvania Gamefowl Breeders Assn. v. Commw. of Pennsylvania* (Pa.Cmmw.1987), 533 A.2d 838, as authority for holding that OGBA has standing in the instant action. In the Pennsylvania case, the association brought an action challenging the constitutionality of a statute prohibiting cockfighting. The court determined that the association had standing to initiate a claim for relief in the nature of a declaratory judgment. The court found the association's members could suffer from a direct, immediate and substantial injury because the statute in question directly affected the freedom of the members of the association to associate with members in organizations in other states where cockfighting is not prohibited. However, in my view this case is not persuasive in our analysis because in the Pennsylvania case the association sought relief in the nature of

a declaratory judgment; conversely, in the case *sub judice* the association is not seeking a form of prospective relief. See *Warth, supra.* Also, the Pennsylvania case did not involve the forfeiture of contraband.

I further disagree with the idea that unless the state fully complies with the mandatory notice provision set forth in R.C. 2933.43(C), the state is prohibited from raising the issue of a claimant's standing to contest a petition for the forfeiture of seized property. I believe the question of standing to assert a claim is always at issue. As I previously discussed I recognize that because the mandatory notification requirement was not satisfied, the proceeding was flawed. However, I do not believe we can disregard the question of standing.

Inasmuch as some owners of the seized property may not have received actual notice of the forfeiture proceeding, perhaps those owners could avail themselves to alternative remedies for recovery. I further recognize that because the individual owners may be subjected to the same perils of criminal prosecution that they apparently wished to avoid during the proceeding below, the owners of the property may, in all likelihood, be reluctant to individually assert their claims. Nevertheless, the issue of standing cannot be disregarded.

## V

Accordingly, based upon the foregoing I believe appellants do not have standing to appeal the trial court's judgment and we cannot consider the merits of this appeal. Therefore, I believe the appeal should be dismissed.