This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Michelle Woodall ("Appellant Woodall"), and Appellant, Eric Jacobs ("Appellant Jacobs"), have appealed from the order of the Summit County Court of Common Pleas, Juvenile Division, that terminated Appellants' parental rights. We affirm.
Appellant Woodall is the mother of Ariz. Woodall, born December 3, 1992; Dasha and Derrick Jacobs, born January 29, 1995; Taija Hubbard, born July 24, 1996; and Renisha Pittman, born April 21, 1998.[1]
Appellant Jacobs is the father of Ariz, Dasha, and Derrick. On January 4, 1999, all five children were taken into custody under Juv.R. 6 when the police responded to a complaint that the children had been left at home by themselves and that Ariz. had burnt herself while cooking for her younger siblings.[2] On January 5, 1999, the Summit County Children Services Board ("CSB") moved for emergency temporary custody of the five children. On that same date, emergency custody was granted. The children were placed in the home of the great-grandmother, Evelyn Smith. On January 14, 1999, the trial court continued the emergency temporary custody order. On March 25, 1999, Ariz, Dasha, Derrick, and Taija were adjudicated to be abused children by reason of endangerment, and Renisha was adjudicated to be a dependent child.[3]
On May 28, 1999, a case plan was implemented for Appellant Woodall, Appellant Jacobs, and the fathers of the Taija and Renisha. Pursuant to the case plan, Appellant Woodall was required to follow all rules of her probation; remain drug free; address any emotional issues; visit her children regularly and provide appropriate adult supervision at all times; attend parenting classes and follow through with recommendations; and obtain and maintain clean, stable, independent housing. Appellant Jacobs was to visit his children regularly.
On June 8, 1999, Ms. Smith requested that the children be removed from her care and advised CSB that Appellant Woodall had taken the children in violation of the trial court's orders. On June 10, 1999, CSB moved the trial court to amend the case plan to provide for placement with a different relative, and to alter Appellant Woodall's visitation. Previously the visitation had been liberal in that it permitted Appellant Woodall the opportunity to visit with her children at any time so long as Ms. Smith was present to supervise the visitation. Pursuant to CSB's motion the visitation would only be permitted to occur during a one-hour session, once a week, at the CSB visitation center. On June 22, 1999, the trial court granted CSB's motion and ordered Appellant Woodall to have supervised visitation at the CSB visitation center. The trial court further ordered Appellant Woodall to undergo a psychological evaluation and follow all treatment recommendations resulting therefrom. On June 25, 1999, the trial court ordered this case referred to the Coordinated Services Team.
On July 8, 1999, CSB moved the trial court for an order terminating all visitation by Appellant Woodall. In its motion, CSB alleged that Appellant Woodall, had on repeated occasions physically removed the children from their placement without supervision in violation of the trial court's order. Additionally, CSB alleged that following the placement of the children in the second relative's home, Appellant Woodall scuffled with the relative in an attempt to remove the children from the home without supervision. During this scuffle the relative's property was damaged. Appellant Woodall's visitation was temporarily terminated pending a hearing on the motion. On August 10, 1999, the trial court reinstated supervised visitation at the CSB visitation center and ordered Appellant Woodall to have no other contact with the children except that permitted by the court.
On October 22, 1999, a review hearing was held on this case. The trial court found that Appellant had pled guilty to probation violations as a result of her harassment of the relatives with whom the children had been placed. Additionally, the trial court found that Appellant Woodall had missed two of her urine screens and had failed to attend at least two of her Alcoholics Anonymous/Narcotics Anonymous meetings in violation of the conditions of her probation. The trial court stated that despite Appellant Woodall's participation in two parenting classes, she had been unable to demonstrate appropriate parenting skills learned through these courses. It was noted that Appellant Woodall used harsh language with the children and engaged in inappropriate behavior with the children. The Coordinated Services Team recommended that the children not be returned to Appellant Woodall at this time. Accordingly, on October 27, 1999, the trial court ordered that the children remain in the temporary custody of CSB.
On November 12, 1999, CSB moved for permanent custody of the children. On December 1, 1999, Appellant Woodall moved the trial court for a six month extension of the temporary custody to permit her to complete the objectives of her case plan. On December 7, 1999, CSB moved to withdraw its motion for permanent custody to allow Appellant Woodall additional time to meet the case plan objectives and to facilitate reunification. On January 14, 2000, following a hearing, the court granted the six month extension. The trial court noted at this time that Appellant Woodall was not compliant with her case plan and that based upon her actions it was hesitant to extend temporary custody. However, in an effort to maintain this family unit, the court granted the extension.
On December 27, 1999, an amended case plan was filed. Appellant Woodall was directed to control and manage her anger; avoid further criminal activity; participate in counseling on a regular basis and follow through on treatment recommendations; utilize appropriate methods of discipline; supervise her children; accept responsibility for previous methods of parenting; attend parenting classes and utilize recommendations; and deal with and accept her own past issues of neglect and abuse. Appellant Jacobs was instructed to participate in his children's lives; establish paternity; pay child support; and visit the children regularly.
On February 14, 2000, CSB terminated Appellant Woodall's visitation. As a result of actions which led to the termination of the visits, CSB filed an amended case plan that instructed Appellant Woodall to participate in a parenting program to help her understand how to appropriately parent her children and to assist her in resolving the behavior which lead to the termination of visits.
Appellant Woodall moved to reinstate the visitation. A hearing was held on the motion during which evidence was presented concerning the basis for the termination. At the hearing, the evidence established that visitation had been terminated after Appellant Woodall accosted a case aide at the CSB visitation center. The evidence showed that the children were out of control and that Appellant Woodall was engaging in inappropriate behavior with the children during the visit. When offered suggestions by the case aide to resolve the situation, Appellant Woodall became very angry and pinned the case aide against the wall and was reportedly making threatening gestures towards her. As a result of this volatile incident, the children were extremely upset and reportedly experienced extreme long-term anxiety. Appellant Woodall alleged that her visitation should be reinstated in light of the progress she had made on her case plan. Despite Appellant Woodall's claims of compliance, the trial court found that significant evidence had been presented to show that she was not in compliance with the case plan. Testimony was presented that Appellant Woodall had failed to comply with the terms of her probation and, accordingly, a warrant had been issued for her arrest. The evidence further showed that Appellant failed to accept her own personal issues of abuse and neglect and that she refused to accept any responsibility for the children's behavior. Evidence was also presented as to the progress of the children following the termination of the visitation. The testimony indicated that following the termination of the visits with Appellant Woodall, the children's behavior showed notable improvement. Upon review of the evidence presented the trial court denied Appellant Woodall's motion to reinstate visitation.
On May 31, 2000, CSB moved for permanent custody of Ariz, Dasha, Derrick, Taija, and Renisha. Following a hearing, on October 5, 2000, the trial court granted permanent custody to CSB and terminated the parental rights of Appellant Woodall, and Appellant Jacobs.[4] The trial court found that it was in the children's best interests that they be placed in the custody of CSB; that the children had been in CSB's custody in excess of twelve of the past twenty-two months; that the children are in need of a legally secure, permanent placement and said placement cannot be effectuated without a grant of permanent custody to CSB; and that the children could not and should not be placed with either parent within a reasonable time. Appellants timely appealed. Appellant Woodall has raised five assignments of error. Appellant Jacobs has raised six assignments of error. The assignments of error have been rearranged and consolidated for ease of review.
 APPELLANT WOODALL'S ASSIGNMENT OF ERROR I The trial court erred in finding that it is in the minor childrens' [sic.] best interest that they be placed in the permanent custody of CSB as the prosecution failed to meet its burden of proof requiring clear and convincing evidence.
 APPELLANT WOODALL'S ASSIGNMENT OF ERROR II The trial court erred in granting CSB's motion for permanent custody thereby terminating the parental rights of Appellant Woodall as the trial court's findings are against the manifest weight of the evidence which could only lead to one conclusion that being contrary to the judgment of the trial court.
 APPELLANT JACOBS' ASSIGNMENT OF ERROR I Appellant [Jacobs] substantially complied with his case plan requirements and therefore a grant of permanent custody was contrary to law.
 APPELLANT JACOBS' ASSIGNMENT OF ERROR IV The decision to grant permanent custody of these children to CSB was against the manifest weight of the evidence[,] and the evidence presented was insufficient to support the decision.
 APPELLANT JACOBS' ASSIGNMENT OF ERROR V The trial court erred by granting CSB's motion for permanent custody as permanent custody was not in the children's best interests.
 In Appellant Woodall's first and second assignments of error and in Appellant Jacobs' first, fourth and fifth assignments of error, Appellants have argued that the trial court's order granting permanent custody of these five children to CSB was not supported by clear and convincing evidence and was against the manifest weight of the evidence. We disagree.
We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
 [T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.
 In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04. See, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74. In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case[,]" a reviewing court may not reverse that judgment. Id. Moreover, "[a]n appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law[.]" Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80:
 The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.
 Accordingly, this Court must review the evidence to establish that there was competent, credible evidence to support each element.
R.C. 2151.414(B) provides that:
 Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See In re Fox
(Sept. 27, 2000), Wayne App. Nos. 00CA38, 00CA39, 00CA40, 00CA41, unreported, at 11; In re Moody (Aug. 7, 2000), Athens App. No. 99CA63, unreported, 2000 Ohio App. LEXIS 3644 at *9-10; In re Moody (Aug. 7, 2000), Athens App. No. 99CA62, unreported, 2000 Ohio App. LEXIS 3645 at *16-17. See, generally, In re Rodgers (2000), 138 Ohio App.3d 510, 521-22; In re Barker (June 16, 2000), Champaign App. No. 20001, unreported, 2000 Ohio App. LEXIS 2609, at *6-1. Instead, under R.C. 2151.414(B)(1), the juvenile court may grant permanent custody to CSB upon two findings: (1) that the children had been in the temporary custody of an appropriate agency "for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999[,]" and (2) that a grant of permanent custody to CSB is in the best interests of the children.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
R.C. 2151.414(B)(1)(d).
The evidence before the trial court demonstrated that the children were taken into custody under Juv.R. 6 on January 4, 1999. Sixty days after that date is March 5, 1999. CSB moved for permanent custody on May 31, 2000. The trial court granted permanent custody on October 5, 2000. By the time of the permanent custody hearing on September 19 and 20, 2000, the children had been in the temporary custody of CSB for the eighteen months of the prior consecutive twenty-two month period.
Thus, when considering a permanent custody motion brought pursuant to R.C. 2151.414(B)(1)(d), the only other consideration becomes the best interests of the child. R.C. 2151.414(D) provides that in determining the best interests of a child, a court should consider all relevant factors, including but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 Upon review of the evidence, it is clear that the record supports that the children's best interests could only have been served through the granting of permanent custody to CSB.
The procedural history of this family clearly establishes that all five children have spent almost their entire lives in the custody of CSB due to various problems with Appellants. CSB first became involved in this matter when Appellant Woodall and Ariz. were removed from the maternal grandmother's home following a drug raid on the home during which the maternal grandmother was arrested. Appellant Woodall and Ariz. were placed with the maternal great-grandmother until they were removed by CSB following an altercation during which Appellant Woodall threatened the maternal great-grandmother with an ice pick and threatened to destroy her property. In 1995, Appellant Woodall, Ariz, Dasha and Derrick were removed from the maternal grandmother's home following an occurrence of domestic violence between Appellant Woodall and the maternal grandmother. Appellant Woodall was placed in a detention home and the children were placed in CSB's custody. The children were returned to Appellant Woodall, but they were almost immediately removed again due to another incident between Appellant Woodall and the maternal grandmother. The children were initially placed with the maternal great-grandmother, but were removed after Appellant Woodall harassed her. In March 1996, the children were returned to Appellant Woodall. In August 1998, CSB was again referred to the family based upon allegations of neglect. However, Appellant Woodall moved away and CSB lost contact with her. In January 1999, the children were taken into custody under Juv.R. 6 following a complaint that the children had been left home alone and Ariz. had burnt herself trying to make food for her younger siblings. The children have remained in the custody of CSB since that time. Clearly, the procedural history indicates that the children have spent a prolonged period of time in the custody of CSB.
In addition to the prolonged family involvement with CSB, several of the witnesses testified that due to extensive behavioral issues with the children, the children require a secure placement in a loving, stable environment. As seen in the history of this case, such a placement has not been possible with Appellants. This is exemplified in the incident which prompted CSB's involvement in this family in 1999, wherein Appellant Woodall left a six-year-old child at home alone to supervise four-year-old twins and a two-year-old child. While Appellant Woodall alleges that she left the children with a babysitter, she pled guilty to child endangering on the charges that arose from this incident, and she thereby admitted to her actions. Additionally, Ariz. told several people, including the case worker and her counselors that she was often left home alone to care for her younger siblings and that she had witnessed violence while in the custody of Appellant Woodall.
There was also testimony concerning the well-being of the children. The evidence indicated that the children have bonded with the foster parents and that they appear to excel when separated from their parents and each other. Additionally, several witnesses testified that following the termination of visitation with Appellant Woodall the children's behavior showed notable improvement. In fact, Ariz's teacher, Kimberly Romanowski, testified that she had concerns about the reinstatement of visitation with Appellant Woodall due to the regressions suffered by Ariz. in the past following such visits.
In light of their tender age, the children did not testify regarding their wishes concerning their placement. The guardian ad litem, did, however, state that the children's best interests would be served only through a grant of permanent custody to CSB. The guardian ad litem stated that Appellant Woodall had been unable to provide the children with a safe, stable, and structured environment. She further went on to illustrate the improvement with the children following their removal. Specifically, she noted that when the children were removed from Appellant Woodall's care they had to be taught how to do basic things such as brush their teeth, personal hygiene, sitting at a table, and eating with utensils.
Accordingly, upon review of the evidence, the trial court's determination that it was in the children's best interests that they be placed in the permanent custody of CSB was supported by competent, credible evidence.
Since there was competent, credible evidence to support that it was in the children's best interests to grant permanent custody to CSB, and the children have been in the custody of CSB for eighteen months of the consecutive twenty-two month period, the trial court did not abuse its discretion in granting permanent custody to CSB under R.C. 2151.414(B)(1). Appellant Woodall's first and second assignments of error and Appellant Jacobs' first, fourth and fifth assignments of error are without merit.
 APPELLANT WOODALL'S ASSIGNMENT OF ERROR III The trial court's decision must be reversed as the trial court improperly quashed a discovery subpoena issued on behalf of Appellant Woodall.
 In her third assignment of error, Appellant Woodall has argued that the trial court erred when it improperly quashed her discovery request. We disagree.
"[A]bsent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." State ex rel. The VCos. v. Marshall (1998), 81 Ohio St.3d 467, 469. An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable decision. State exrel. Askew v. Goldhart (1996), 75 Ohio St.3d 608, 610.
In this case, Appellant Woodall's attorney made a request for the production of documents on the second day of trial. The prosecutor representing CSB objected noting that the request was for an inordinately large amount of documents and that it would take a significant amount of time to compile these records. Based upon the timing of the request at such a late period in the proceedings, the trial court quashed the subpoena noting that Appellant Woodall knew of these records and could have requested them much earlier. This Court is unable to say that such an order is an abuse of discretion. Appellant Woodall's third assignment of error is without merit.
 APPELLANT WOODALL'S ASSIGNMENT OF ERROR IV The trial court's decision must be reversed based upon prosecutorial misconduct.
 In her fourth assignment of error, Appellant Woodall has argued that the trial court's decision should be reversed due to the misconduct of the prosecutor during the course of the trial. We disagree.
When reviewing allegations of prosecutorial misconduct, appellate courts must consider that "`the touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hill (1996),75 Ohio St.3d 195, 203, quoting Smith v. Phillips (1982), 455 U.S. 209,219, 71 L.Ed.2d 78, 87. The Ohio Supreme Court has declared that prosecutorial misconduct is not grounds for error unless the individual has been denied a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239,266. In order to reverse a conviction based on prosecutorial misconduct, the individual must prove that the comments were improper and that they prejudicially affected her substantial rights. State v. Smith
(1984), 14 Ohio St.3d 13, 14.
Appellant Woodall has alleged that the prosecutor committed error when she introduced evidence that Appellant Woodall failed to comply with the terms of her probation in the form of an arrest warrant served on her at the trial.
Maintaining compliance with her probation was a requirement of Appellant Woodall's case plan. Therefore, evidence which goes to show that she had not been compliant with her case plan is admissible. Such a fact does not necessarily need to be proven through a certified copy of a conviction for a probation violation. Therefore, it was not error for such evidence to be presented.
Even assuming arguendo that such evidence was improper, Appellant Woodall has failed to establish that such proffered evidence prejudiced her substantial rights. This Court notes that this matter was tried to the bench and not a jury. This Court further notes that the arrest warrant was excluded as an exhibit by the trial court with the court noting that this was not evidence of a conviction and therefore was not properly admitted as proof of the fact that Appellant Woodall failed to comply with the terms of her probation. Therefore, while the serving of the arrest warrant upon Appellant Woodall in court does seem to be unnecessary high drama, this Court presumes that the trial court followed its own rulings and considered only that evidence that was properly admitted. Accordingly, Appellant Woodall's fourth assignment of error is without merit.
 APPELLANT WOODALL'S ASSIGNMENT OF ERROR V The trial court's decision must be reversed based on the ineffective assistance of counsel on behalf of Appellant Woodall.
 In her fifth assignment of error, Appellant Woodall has argued that she was denied effective assistance of counsel. We disagree.
The United States Supreme Court has set forth a two-part test to determine if a conviction or sentence should be reversed based upon ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674, 693. "First, the [appellant] must show that counsel's performance was deficient." Id. To meet this standard Appellant Woodall must be able to prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the [appellant] by the Sixth Amendment." Id. Second, Appellant Woodall must establish that the deficient performance by counsel was serious enough that it resulted in prejudice to her "so serious as to deprive the [appellant] of a fair trial, a trial whose result is reliable." Id. The Ohio Supreme Court set out a substantially similar standard in State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus, holding "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."
Appellant Woodall has alleged that counsel's representation was deficient in that (1) he failed to timely subpoena three witnesses, and (2) he failed to timely request documents from CSB resulting in the trial court quashing her discovery motion. She has claimed that her prejudice arises from her inability to present the testimony of these witnesses and rebut the historical references made to this case through the requested documents. However, Appellant Woodall has failed to indicate how the absence of such witnesses and records altered the result of a trial whose result was reliable. Accordingly, Appellant Woodall's fifth assignment of error is without merit.
 APPELLANT JACOBS' ASSIGNMENT OF ERROR II CSB did not use reasonable and diligent efforts to reunite this family.
 In his second assignment of error, Appellant Jacobs has argued that CSB failed to comply with the mandates of R.C. 2151.419(A)(1). Specifically, he has alleged that CSB failed to make reasonable efforts to prevent the removal of the children from their home. We disagree.[5]
R.C. 2151.419 provides in part:
 (A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314 [2151.31.4], 2151.33, or 2151.353 [2151.35.3] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount.
 CSB took extensive measures to reunify the children with Appellant Jacobs. The case plan had several requirements geared solely towards reunification of the children with Appellant Jacobs. The case plan provided that Appellant Jacobs was to establish paternity of the children, support the children financially, and visit regularly with his children. Appellant Jacobs did establish paternity of Ariz, Dasha, and Derrick. However, as Appellant Jacobs admitted, he did not pay child support for these children. While this Court understands that Appellant Jacobs lives in Georgia and is unable to see the children frequently, he failed to maintain any sort of visitation schedule with the children. He visited only sporadically, at best, and he threatened to not return when the children misbehaved.
In spite of this lack of compliance with his case plan, CSB conducted an interstate compact with Clayton County, Georgia in order to complete a home study to assess the viability of the placement of these children with Appellant Jacobs. It was the recommendation of the Clayton County Children Services Board that the placement was unsuitable. CSB cannot be faulted for this finding. Therefore, the trial court did not err when it found that reasonable efforts were made to prevent the removal of the children from Appellant Jacobs' home. Appellant Jacobs' second assignment of error is without merit.
 APPELLANT JACOBS' ASSIGNMENT OF ERROR III The trial court improperly admitted evidence regarding [Appellant Jacobs'] criminal history as a juvenile and offenses committed more than ten years ago.
 In his third assignment of error, Appellant Jacobs has argued that the trial court erred when it permitted his credibility as a witness to be attacked through the use of criminal convictions that occurred more than ten years prior to the trial. He has alleged that such evidence is specifically excluded under Evid.R. 609.
Evid.R. 609(B) provides that:
(B) Time limit
 Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
 Appellant Jacobs has argued that since the convictions were greater than ten years old and advance notice was not provided, the evidence was admitted in error.
CSB has argued that such convictions were not offered for the purpose of attacking Appellant Jacobs' credibility, but rather were offered in accordance with R.C. 2151.414. Pursuant to R.C. 2151.414(E)(13) evidence that a parent is "repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child" may be used to establish that a child cannot or should not be placed with a parent within a reasonable time. CSB was clear at the trial that it was this basis for which they sought the introduction of the evidence referencing Appellant Jacobs' past incarcerations. R.C. 2151.414 does not place a time limit on the evidence of convictions. Accordingly, it was not error for the trial court to admit this evidence of past convictions. Appellant Jacobs' fifth assignment of error is without merit.
 APPELLANT JACOBS' ASSIGNMENT OF ERROR VI The trial court erred to the prejudice of [Appellant Jacobs] by allowing evidence of the interstate compact to be admitted as the manner in which the evidence was handled constituted unfair surprise.
 In his sixth assignment of error, Appellant Jacobs has argued that the trial court abused its discretion when it permitted evidence of the home study completed pursuant to the interstate compact to be admitted as evidence. Specifically, he has argued that the fact that the interstate compact report was provided to him on the first day of trial prejudiced him by preventing him from being able to adequately prepare and by preventing him from calling witnesses to rebut the statements in the report. We disagree.
Appellant Jacobs was presented with the report on the first day of trial. Appellant Jacobs has argued that the report was made available to the prosecutors approximately two weeks prior to trial and the delay in conveying the report to him was fundamentally unfair. The record does not support these assertions. The case worker from CSB did speak with the case worker in Clayton County, Georgia, and was informed of her initial thoughts on placing the children with Appellant Jacobs. However, despite repeated requests by CSB for the report, the report was not completed until after the commencement of trial. The delay was attributable to additional efforts to attempt to garner approval for a placement with Appellant Jacobs. Therefore, the trial court did not err in allowing the report to be admitted where it had not been given to Appellant Jacobs until after the commencement of trial.
Appellant Jacobs has alternatively argued that the admission of the report was error because it prohibited him from effectively preparing and presenting his case. Generally, appellate courts will not consider arguments that could have been, but were not, raised in the trial court.In re 730 Chickens (1991), 75 Ohio App.3d 476, 488. We find that Appellant Jacobs has waived this issue.
After the parties and the court had ample time to review the report, a hearing was held on all objections to the report. As a result of this hearing, significant portions of the report were deleted. The trial court only admitted those portions of the report which contained facts specifically found by the investigating officer in Georgia. Following the deletion of these portions of the report, Appellant Jacobs' counsel indicated that he had no objections to the admission of the report. Accordingly, since Appellant Jacobs indicated that he had no problem with the admission of the redacted version of the interstate compact report, he may not challenge the validity of it now. Appellant Jacobs' sixth assignment of error is without merit.
Appellant Woodall's five assignments of error and Appellant Jacobs' six assignments of error are overruled and the judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ______________________________________ LYNN C. SLABY
[1] Appellant Woodall also has a sixth child, Deaire, born during the pendency of this case. Deaire is not a subject of this case.
[2] Appellant Woodall subsequently pled guilty to child endangerment and was sentenced to six months incarceration for the events that led to the taking of the children under Juv.R. 6.
[3] This Court notes that in the trial court's order adjudicating Ariz, Dasha, Derrick, and Taija, the trial court indicates that it has adjudicated these children to be "Endangered children" pursuant to R.C.2151.031(B). Since an adjudication of "endangered" is not proper under the statute, this Court construes this to be an adjudication of abuse since the definition of an abused child as set forth in R.C. 2151.031(B) includes a child who is endangered.
[4] The parental rights of the fathers of Taija and Renisha were also terminated at that time. These individuals have not appealed the order of the trial court.
[5] We will address this issue only as it relates to the CSB's efforts to reunify the children with Appellant Jacobs since Appellant Woodall has not raised this issue.