[Cite as *Arruda v. Farmer*, 2015-Ohio-5511.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SARAH J. ARRUDA | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Petitioner-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| BRIAN J. FARMER | : | Case No. 15-CA-49 |
| | : | |
| Respondent-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Court of Common
Pleas, Case No. 15 CV 00033


JUDGMENT:            Affirmed


DATE OF JUDGMENT:            December 29, 2015


APPEARANCES:

For Petitioner-Appellee

MARK POOLE
418 Highbanks Valley Court
Newark, OH  43055

For Respondent-Appellant

BRIAN J. FARMER, Pro Se
3859 Martinsburg Road
Gambier, OH  43022

*Farmer, P.J.*

{¶1}   On January 14, 2015, appellee, Sarah Arruda, filed a petition for a civil stalking protection order against appellant, Brian Farmer.   Appellee claimed appellant first contacted her via a dating website, Match.com.   Appellee did not respond. Appellant obtained appellee's personal information (full name, birthdate, home address, work place, email addresses) even though the information was not available on Match.com.   He contacted appellee through messages, packages, emails, letters, and cards, from October 2013 to December 2014.   All of the contacts were unwelcomed. Appellee was scared and in a state of constant fear.

{¶2}   On same date, a magistrate issued an ex parte protection order pursuant to R.C. 2903.214, and scheduled a hearing.   A hearing before a magistrate was held on March 25, 2015.   On April 23, 2015, the magistrate issued a civil stalking protection order against appellant for five years.   Appellant filed objections.   By judgment entry filed June 11, 2015, the trial court overruled the objections and approved the magistrate's order.

{¶3}   Appellant filed an appeal and this matter is now before this court for consideration.   Assignments of error are as follows:

I

{¶4}   "WHETHER THE JUDGE ERRED IN IMPOSING RESTRICTIONS IN THE JUDGEMENT ENTRY NOT PRESENT IN THE MAGISTRATE'S ORDER."

II

{¶5}   "WHETHER THE COURT ERRED IN IMPOSING RESTRICTIONS THAT DO NOT HAVE SUFFICIENT NEXUS TO THE CONDUCT AT ISSUE."

III

{¶6}   "WHETHER THE TRIAL COURT ERRED IN ISSUING AN EX PARTE ORDER."

IV

{¶7}   "WHETHER THE TRIAL COURT ERRED IN ISSUING THE CIVIL PROTECTION ORDER."

V

{¶8}   "WHETHER THE APPELLEE MET HER BURDEN OF PROOF ON ALL THE ELEMENTS NECESSARY FOR THE ISSUANCE OF THE PROTECTIVE ORDER."

VI

{¶9}   "WHETHER §2903.211 IS UNCONSTITUTIONAL."

VII

{¶10}  "WHETHER THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO DISMISS/QUASH."

{¶11}  Appellant has assigned seven assignments of error.  In an effort to give clarity to this opinion, we will address them out of order.

IV, V

{¶12}  Appellant claims the trial court erred in issuing the civil stalking protection order.  We disagree.

{¶13}  On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and

determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶14} R.C. 2903.214 governs protection orders. Subsection (C)(1) states the following:

> (C) A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court. The petition shall contain or state all of the following:
>
> (1) An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order or committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation.

{¶15} R.C. 2903.211 governs "menacing by stalking" and states the following at subsection (A)(1):

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's mental distress, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶16} "Pattern of conduct" is defined in subsection (D)(1) as: "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." The statute does not define "closely related in time." As explained by our brethren from the Twelfth District in *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, ¶ 10 (12th Dist.):

[W]hether the incidents in question were "closely related in time" should be resolved by the trier of fact "considering the evidence in the context of all the circumstances of the case." *State v. Honeycutt,* Montgomery App. No. 19004, 2002-Ohio-3490, 2002 WL 1438648, ¶ 26, citing *State v. Dario* (1995), 106 Ohio App.3d 232, 238, 665 N.E.2d 759. In determining what constitutes a pattern of conduct for purposes of R.C.

2903.211(D)(1), courts must take every action into consideration even if, as appellant argues, "some of the person's actions may not, in isolation, seem particularly threatening." *Guthrie v. Long,* Franklin App. No. 04AP-913, 2005-Ohio-1541, 2005 WL 737402, ¶ 12; *Miller v. Francisco,* Lake App. No. 2002-L-097, 2003-Ohio-1978, 2003 WL 1904066, ¶ 11.

{¶17} Subsection (D)(2) defines "mental distress" as:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶18} As explained by the *Middletown* court at ¶ 7:

However, whether treatment is sought is not determinative; rather, it is the duty of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's actions. *State v. Rucker* (2002), Butler App. No. CA2001-04-076, 2002 WL 83731. In making this determination, the trial court "may rely on its knowledge and experience in

determining whether mental distress has been caused." *Smith v. Wunsch,* 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18.

{¶19} Appellant argues evidence or testimony was not presented to show he intended to cause appellee physical harm or mental distress, he ever threatened appellee, or he knowingly caused appellee physical harm or mental distress.

{¶20} Appellee filed her petition for a civil stalking protection order on January 14, 2015. Attached to her petition is her statement wherein she alleged appellant made contacts with her which were unsolicited, unwelcomed, and scared her. She stated she was afraid of being alone, was in a constant state of fear, and was apprehensive as to what he would do next.

{¶21} In granting appellee the civil stalking protection order, the magistrate entered the following findings of fact (April 23, 2015):

Respondent initially contacted petitioner through an online dating website, Match.com, in the fall of 2013. Petitioner did not respond to his requests. Approximately a month or so later, respondent sent birthday wishes and later sent petitioner a book to her residence. Petitioner reported respondent, changed her username, and blocked respondent on the website once she was aware he found out her name, birthdate, and address - none of which was listed on the dating website. Approximately a month later, respondent contacted petitioner again through a new username. Petitioner declines his request and reported him again to the

website, and ultimately closed her online account. Respondent then found both her work and private email addresses and sent her messages. Respondent sent another package to petitioner, which she refused and returned to sender. About a month after that, another package from respondent was hand delivered to her residence. This time it was in a clear bag and contained pepper spray, a Taser, chocolates, honey, and letters from respondent. After continued unwanted contact, petitioner wrote respondent to not contact her anymore. She contacted law enforcement and filed her petition. Petitioner is afraid of respondent, has modified her lifestyle in fear of him, and has sought medical attention for anxiety due to his behavior. Petitioner wants no contact from respondent.

{¶22} Appellee testified as to the length and pattern of appellant's contacts with her. She explained in October 2013, appellant sent her messages via Match.com and she did not respond as she "wasn't interested at all." T. at 10-11.

{¶23} One month later, appellant sent appellee a "Happy Birthday" message, and the next day sent a message saying he could not stop thinking about her and it was "incredibly stressful" trying to contact her. T. at 11-12; Plaintiff's Exhibit 1. This made appellee "extremely uneasy." T. at 13.

{¶24} At Christmas, she received in the mail a book titled "Please Understand Me" and later discovered it had been sent by appellant. T. at 14. Appellee's name and home address were not listed on Match.com so she was very scared and concerned as

to how appellant had discovered the information.  T. at 15.  Appellee informed Match.com, blocked appellant, and changed her user name.  T. at 16-17.

{¶25}  In February 2014, appellant again messaged appellee via Match.com. Appellant had changed his user name and his location which enabled him to avoid the block appellee had placed on her account.  T. at 17-18.  Appellant stated he was captivated by her and explained how he had obtained her full name and her personal information.  T. at 17-23; Plaintiff's Exhibit 2.  Appellant went to great lengths to obtain the information.  At the end of the message, appellant stated, "[i]f you are not interest in me, I will wish you the best of luck in your search to find a soulmate to share your life with and I will leave you alone."  T. at 24; Plaintiff's Exhibit 2.  Appellee sent him an automated "No thanks" message via Match.com, blocked him again, and reported the contact to Match.com.  T. at 24-25; Plaintiff's Exhibit 3.  Thereafter, appellee closed her Match.com account.  T. at 26.

{¶26}  Appellant contacted appellee again via her personal email with "about twenty-seven pages of pictures from some cave."  T. at 26-27; Respondent's Exhibit K. This persistence made appellee "more uneasy" and made her look over her shoulder. T. at 27.

{¶27}  In April 2014, appellant contacted appellee again via her work email and invited her to a community festival.  T. at 27-28; Plaintiff's Exhibit 4.  This contact shocked and scared appellee because she had never listed where she worked.  T. at 28-29.

{¶28} After being told by appellee to stop contacting her, appellant mailed a package to her home in November for her birthday. T. at 31-32; Plaintiff's Exhibit 5. Appellee refused the package and sent it back. T. at 33.

{¶29} On Christmas Day, appellee discovered a package in a clear plastic bag on her doorstep containing several boxes of chocolates, honey, a business card, a stun gun, pepper spray, and two letters from appellant. T. at 34, 37, 47; Plaintiff's Exhibits 6, 7, and 8. There were no markings on the package to indicate it had been mailed. T. at 35-36.

{¶30} In the first letter, appellant wrote about Ohio harassment law, stating he could not be charged with "Menacing by Stalking" because he did not intend to cause appellee physical harm or mental distress. T. at 39-40; Plaintiff's Exhibit 7. He also mentioned, "the offender must contact the victim more than once in a 30 day period to meet the requirements." In this same letter, appellant classified appellee's actions as "pretty hateful." T. at 42. He stated he was contacting her again, "risking your anger again...but at the same time, trying to adjust my behavior in the hopes that you may be more pleasant this time." T. at 43. Appellant characterized appellee's reactions as either "a depth of character that is not commonly found" or a "full blown psychotic nutcase," and stated his curiosity was piqued and he wanted to meet her face to face. T. at 44-45.

{¶31} In the second letter, appellant stated appellee's "childish fears are actually kind of adorable." T. at 48; Plaintiff's Exhibit 8. He stated, "there is something very special about you...that you are worth the time and effort." T. at 49. At the end of the

letter, appellant stated, "[y]ou reap what you sow in life.  If you do not like the karma you are harvesting, then you should reconsider how you treat others."  T. at 51.

{¶32}  On December 29th, appellee received a sympathy card from appellant for her grandfather's passing.  T. at 51-52.  The card was unsigned, but appellee recognized the handwriting.  *Id.*

{¶33}  The tone and meaning of these contacts scared appellee.  T. at 47, 49.  These repeated unwelcomed contacts caused appellee "[e]xtreme mental distress."  T. at 41.  She was very scared, was constantly looking over her shoulder, was afraid to be by herself, did not go anywhere at night, and was afraid to be home alone.  T. at 41, 56-57.  She was having trouble sleeping and was under constant stress "[b]ecause he continued to get bolder so I didn't know what he was capable of."  T. at 57.  She was experiencing "emotional break downs" and was taking medication for anxiety.  T. at 74-75.  As a result, appellee contacted the police, installed an alarm system and security cameras, and notified her coworkers and neighbors of the situation.  T. at 55-56.

{¶34}  During appellant's pro se cross-examination of appellee, it was clear he did not deny the contacts, packages, or emails.  T. at 59, 62-64, 85-86, 90-91, 95-96, 99.

{¶35}  Appellant argued he never threatened appellee, never intended for her to be fearful, and posed no threat to her.  T. at 116.  The only thing he was guilty of was "being a nerd and naïve country bumpkin who expects other people to be honest and fair in life."  T. at 116.  It is appellant's defense that he never engaged with appellee face to face, never made an overt threat, and appellee's emotional distress claim was not verified.

{¶36} Given appellee's testimony and the exhibits presented, we find ample and sufficient evidence to establish that appellant engaged in persistent harassing activities with veiled suggestions of actions of a threatening nature i.e., stun gun, pepper spray. Appellant went so far as to imply a conspiracy between appellee and Match.com. Sufficient evidence was presented to establish appellee feared for her safety at home and at work i.e., installation of alarm system/security cameras, notice to coworkers/neighbors. Appellant's numerous unwelcomed contacts were sufficient to cause appellee to be fearful of being home alone, going out at night, or leaving her home.

{¶37} Upon review, we find the trial court did not err in issuing the civil stalking protection order. The trial court did not lose its way.

{¶38} Assignments of Error IV and V are denied.

I, II

{¶39} Appellant claims the trial court erred in imposing restrictions not included in the magistrate's order and imposing restrictions with an insufficient nexus to the conduct. We disagree.

{¶40} Appellant argues the magistrate did not impose an alcohol and drug restriction, but the trial court did. We do not find where the trial court imposed such a restriction. In its judgment entry filed June 11, 2015 adopting the magistrate's order, the trial court noted at Section XIII: "The Court notes that the order does prohibit respondent from drinking or possessing alcohol. (Order at ¶11)." A review of the magistrate's order at ¶ 11 indicates the box was *not* checked. The trial court concludes its judgment entry by stating: "Finding the decision is supported by the record, and there are no errors of

law, the Court approves the Magistrate's granting of a Civil Protection Order. Respondent's objections are overruled except objection 14. Paragraph 8, concerning firearms, shall be stricken from the order." As a matter of law, we find appellant is not subject to an alcohol/drug restriction under the civil stalking protection order.

{¶41} Appellant complains of Restrictions No. 1 and 2 which state the following:

1. RESPONDENT SHALL NOT ENTER the residence, school, business, place of employment, day care centers, or child care providers of the protected persons named in this Order, including the buildings, grounds, and parking lots at those locations. Respondent may not violate this Order even with the permission of a protected person.

2. RESPONDENT SHALL NOT INTERFERE with the protected persons' right to occupy the residence including but not limited to canceling utilities or insurance or interrupting telephone service, mail delivery, or the delivery of any other documents or items.

{¶42} Appellant also complains of Restriction No. 4, ordering him to stay 500 feet away from appellee, and Restriction No. 7, he shall not "cause or encourage any person to do any act prohibited by this Order."

{¶43} Appellant argues he never entered any of the listed places, never interfered with appellee's right to occupy her residence as listed, never engaged in face to face contact with appellee, and "never caused or encouraged anyone else to commit

menacing by stalking." Appellant's Brief at 11-12. Therefore, the restrictions are unnecessary.

{¶44} As set forth above in Assignments of Error IV and V, the evidence established on two occasions, appellant caused packages to be placed at appellee's home, and he also sent an email to her at work. T. at 28, 31, 34. Appellant's February 8, 2014 Match.com message to appellee (Plaintiff's Exhibit 2) demonstrates he was very sophisticated in his ability to discern personal facts about appellee:

After I learned your birthday, it only took about 3 minutes online to figure out who you are. You put a lot of personal information in your profile. I did a date of birth search for traffic tickets for the Newark Municipal Court. At first I just looked for anyone with the first name Jayne, but there was no one with the name Jayne. When I saw the name Sarah J. Arruda I had the gut feeling that it could be Sarah Jayne...so I did a google search on Sarah J. Arruda and that just confirmed who you are.

{¶45} Upon review, we find a sufficient nexus between the restrictions and appellant's conduct.

{¶46} Assignment of Errors I and II are denied.

III

{¶47} Appellant claims the magistrate erred in issuing the ex parte order prior to the hearing. We disagree.

{¶48} Subsection (D)(1) of the statute governing protection orders, R.C. 2903.214, states the following:

If a person who files a petition pursuant to this section requests an ex parte order, the court shall hold an ex parte hearing as soon as possible after the petition is filed, but not later than the next day that the court is in session after the petition is filed. The court, for good cause shown at the ex parte hearing, may enter any temporary orders, with or without bond, that the court finds necessary for the safety and protection of the person to be protected by the order. Immediate and present danger to the person to be protected by the protection order constitutes good cause for purposes of this section. Immediate and present danger includes, but is not limited to, situations in which the respondent has threatened the person to be protected by the protection order with bodily harm or in which the respondent previously has been convicted of or pleaded guilty to a violation of section 2903.211 of the Revised Code or a sexually oriented offense against the person to be protected by the protection order.

{¶49} Appellant challenges the "threat of harm" claimed in appellee's petition, arguing it was insufficient.

{¶50} In her statement attached to her petition filed January 14, 2015, appellee stated the following:

I am scared to be alone.  I am scared he will show up at my school.
I don't know what he is going to do next.  I am worried about how he will
react.  I am in a constant state of fear.  Since he is not taking No for an
answer I am really scared.

I have put things into place to me to keep me safe and to help
protect me.  I have alerted my neighbors so they can be aware.  I am
looking over my shoulder especially when I arrive at home.  I request that
the court grant my S/CPO.

{¶51}  The statement also recites the course of events as discussed above in Assignments of Error IV and V.

{¶52}  Upon review, we find the magistrate had good cause and did not err in issuing the ex parte order.

{¶53}  Assignment of Error III is denied.

VI

{¶54}  Appellant claims the menacing by stalking statute, R.C. 2903.211, is unconstitutional because it is vague, arbitrary, violates the First Amendment, and lacks clarity of command.  We disagree.

{¶55}  We note this constitutional argument was not made to the trial court.  As explained by our brethren from the Seventh District in *In re Retaining Vorys, Sater, Seymour & Pease, L.L.P., as Special Counsel,* 192 Ohio App.3d 357, 2011-Ohio-640, ¶ 24 (7th Dist.):

"An appellate court will not consider any error, including constitutional error, which counsel for a complaining party could have, but failed to call to the trial court's attention at a time when such error could have been avoided by the trial court." *In re 730 Chickens* (1991), 75 Ohio App.3d 476, 488, 599 N.E.2d 828, citing, *State v.1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524.

{¶56} Further, the specific constitutional challenges "vague, arbitrary, violates the First Amendment" have been found to be meritless. *State v. Plants,* 5th Dist. Tuscarawas No. 2009 AP 10 0054, 2010-Ohio-2930; *State v. Barnhardt,* 9th Dist. Lorain No. 05CA008706, 2006-Ohio-4531; *State v. Werfel,* 11th Dist. Lake Nos. Nos. 2002-L-101, 2002-L-102, 2003-Ohio-6958; *State v. Szerlip,* 5th Dist. Knox No. 01 CA05, 2002-Ohio-900.

{¶57} Assignment of Error VI is denied.

VII

{¶58} Appellant claims the trial court erred in denying his motion to dismiss/quash. We disagree.

{¶59} Appellant filed the motion on March 23, 2015, two days before the magistrate's hearing of March 25, 2015, and set forth the defenses reviewed above in Assignments of Error IV and V. Given our opinion in those assignments, we find the matter herein to be moot.

{¶60} Assignment of Error VII is denied.

{¶61} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By Farmer, P.J.

Wise, J. and

Delaney, J. concur.


SGF/sg